# CHARLESTON

## PARKS *v.* MORRIS, LAYFIELD & CO.

Submitted June 13, 1907.    Decided November 26, 1907.

1. APPEAL—*New Trial—Review—Exceptions.*

    If there is a motion for a new trial and an exception to its refusal, no exception to the action of the court for entering judgment need be made to authorize the Supreme Court to review the case.   (p. 52.)

2. SALE—*Contract.*

    To make a contract of sale there must be both a proposal and acceptance of that proposal.    The minds of the parties must meet and agree finally upon the sale.   (p. 53.)

3. ACTIONS—*Waiver of Tort—Action in Assumpsit.*

    When a trespasser cuts and sells, or converts to his use, trees growing on land, the owner of the land may waive the tort, and instead of bringing action for the tort, sue in *assumpsit* and recover on the common count for money had and received, or on a *quantum valebat* for their value: but he cannot maintain *assumpsit* when the title to the land is in contest between the parties.   (p. 55 )

4. EVIDENCE—*Opinion.*

    A witness cannot upon a jury trial give his mere opinion or conclusion that he has valid title to land.   (p. 58.)

5. STRANGER—*No Notice to.*

    No notice to stranger from record of deed.   (p. 58.)

Error to Circuit Court, Ritchie County.

Action by W. H. Parks against Morris, Layfield & Co. Judgment for plaintiff.    Defendants bring error.

*Reversed.    Remanded.*

FIDLER & ADAMS, for plaintiff in error.

FREER & ROBINSON, for defendant in error.

BRANNON, JUDGE:

W. H. Parks brought an action of *assumpsit* in the circuit court of Ritchie county against Morris, Layfield & Co., and recovered a verdict and judgment, and the defendants bring the case to this Court.

The first point arising is the claim for Parks that we cannot consider the evidence or instructions or ruling upon evidence for the reason that no exception was made to the action of the court in rendering judgment. There is nothing in this point. There was a motion to set aside the verdict, and an exception to the ruling of the court refusing to do so. This Court has repeatedly held that while there must be a motion for a new trial and exception for its refusal, that is enough to authorize the review of the case where bills of exception present the case properly. This Court has never demanded, as a requisite for such review, that there shall be an exception to the rendering of judgment. By making the motion for a new trial, and exception to its refusal, the party has protested against carrying the verdict into judgment. In *Congrove* v. *Burdett*, 28 W. Va. 220, it is explicitly held that when points in the case are saved and a motion for a new trial overruled, and exception to the action of the court in overruling such motion, that is enough. In the case decided at this term, *Chadister* v. *B. & O. R. Co.*, this is distinctly held.

Parks' demand is for timber cut upon land claimed by him and also claimed adversely to him by Simon Sterne. Morris, Layfield and Co. received a deed from Sterne conveying the timber and cut the timber from the land. Parks claims that Morris, Layfield and Co. made a contract with him for the conditional purchase of the timber. Parks exhibited a deed to him from one H. H. Bennett for the land. Sterne brought an action of ejectment years ago against Parks on account of the latter's claim to the land. Sterne claimed the land under a sale and deed made by the commissioner of forfeited and delinquent lands in 1846, under an old title eminating from the Commonwealth of Virginia in 1797, and claiming that in the conveyence to him from the commissioner of

forfeited and delinquent lands there had occurred a mistake in boundary, so that the conveyance ought to have included, but did not, the land in controversy, Sterne brought a chancery suit, stating that owing to such mistake he might be embarrassed in the prosecution in a law court of this action of ejectment, and he sought to have said conveyance corrected so as to give the true boundary of the land. On the trial of this action of *assumpsit* Parks gave evidence, as a basis for recovery for the timber, of an alleged contract between him and the defendants. An important question occurs. Was there such contract for the purchase of the timber from Parks by Morris, Layfield and Co? Parks as a witness in the case stated that he made a contract for the sale of the timber with W. B. Morris, one of the defendant firm, in which the defendants were to take the timber at $6.00 per acre, "and the contract was he was to pay for it at the decision of these law suits that were pending." He stated that he met Morris on the land, casually, and on cross-examination he was asked to state just what was said in the interview with Morris, and he made this statement: "Well, my recollection is that I asked him when he offered to buy it what he was paying for the Sterne timber and he told me $6.00 per acre, and asked me if I would take that for mine, and I told him I would." When asked if that was all that was said he said that he did not remember whether that was all that was talked or not. He said that he did not remember whether Morris asked him what he would take. That is inconsistent with his statement that Morris offered to buy. " He (Morris) said what he was paying Sterne for the timber, and I told him I would take that for mine." Was this a contract? We say not. Morris made no actual proposal to buy. Parks simply asked Morris what he was paying Sterne for timber, and Morris asked him if he would take the same. He made only an inquiry, but he made no *acceptance* of the proposition of Parks to take $6.00 per acre. A contract cannot bind a party proposing it until acceptance of the other party. The minds of the parties must meet in a consummated contract. If anything remains to be done to make a contract, if the agreement is not consummated, if all the terms have not been mutually agreed upon, no contract arises between the parties. *McCully* v. *Phoenix Ins. Co.*, 18 W.

Va. 782. "A mere proposal to sell land does not become a sale until accepted and notice of acceptance given the proposer." *Dyer* v. *Duffey*, 39 W. Va. 148. For the want of a complete contract Parks could not recover by force of a contract. The evidence shows no finished contract.

Several instructions submitted to the jury the question whether such a contract was made and predicated recovery on it, if there was such contract, and such instructions are bad for that reason, no such contract having been proven. For this reason plaintiff's instructions Nos. 1, 3, 7 and 8 are bad.

Even if we take Parks' own statement of the contract, it is not sufficient for recovery. He states that he was to be paid for the timber only at the decision of the two cases then pending, the ejectment and chancery suits. Such is the fair interpretation of his evidence. His words are, "The contract was he was to pay for it at the *decision* of these law suits that were pending." They never were decided on their merits. A non-suit was entered in the action of the ejectment. As is well known a non-suit decides nothing of the merits. The chancery suit was dismissed for failure to file an amended bill, "without prejudice to the plaintiff and their ejectment suit now pending in this court on the docket in the name of Simon Sterne vs. W. H. Parks, et al." So, nothing was decided as to the merits in the chancery suit. Now, if Morris did agree to pay Parks for the timber on the *decision* of these suits, what was the true meaning of the parties? Was it the intention to pay without such a decision of those suits as would decide their merits? Surely not. If there should be a final decision on the merits in favor of Sterne the timber would belong to Morris, Layfield and Co.; whereas if such decision should be in favor of Parks the timber would belong to him. The chancery suit was dismissed on the motion of Parks and presumably the non-suit likewise, as the order shows the defendants were present when the non-suit was entered. So, Parks prevented a decision on the merits. Therefore, the alleged contract as stated by Parks would not support the verdict, because a condition of it was that payment for the timber was to be made only upon a determination of those suits, that is, a determination which should settle the title to the land finally and be *res judicata*.

Under this principle there was error in giving printed instruction No. 6, saying that though Sterne should yet have the right to institute suit for the land, yet as there was no pending litigation between Sterne and Parks, and that the litigation pending at the time of the oral contract had ended, as shown by the records, and that too favorably to Parks, the condition had happened on which payment was recoverable from Parks. The instruction was bad because it told the jury that the mere non-suit in the ejectment and dismissal without prejudice of the chancery suit were decisions such as to call for payment by the defendants. The instruction told the jury that such dismissals were in favor of the defendants in those suits, when the dismissals decided nothing. Although I have supposed a conclusion in instruction No. 6 by saying that it told the jury that such dismissal of those suits would entitle Parks to the money for the timber, yet we guess at that conclusion, since the instruction itself contains no legal conclusion from the facts stated in it. That is by inadvertence omitted. For the same reason there was error in giving the plaintiff's instruction No. 7. Also instruction No. 8 for the plaintiff is bad, because it too told the jury that the non-suit and dismissal of the chancery suit were of such effect in law as would under the contract make the defendant liable. For that reason, too, plaintiff's instruction No. 1 is bad.

But though there was no contract to justify a recovery by Parks, we must inquire whether a recovery, in an action of *assumpsit*, could be had on the ground that the defendants cut and converted to their own use wrongfully by trespass the timber of Parks, belonging to Parks if even it did belong to him. Parks showed no title paper save the deed to him from Bennett. He traced no title from an original or common source. There is no doubt that an owner of land whose timber is wrongfully taken from it and sold or converted from it by trespass may waive the tort and recover the value of the timber upon the common counts. He may recover on a *quantum valebat*, if not sold, and for money had and received, if sold. The timber having been converted into personalty by severance its true owner may recover its value in *assumpsit*. *Maloney* v. *Barr*, 27 W. Va. 381.

The plaintiff himself by introducing the record of the

chancery suit himself showed abundantly that the defendants claimed right to take the timber under an old title dating back to 1797. The plaintiff himself showed that defendants were in actual possession taking the timber under that claim. Parks claimed under a different, hostile title. Thus, it is a contest between two hostile titles. Now, where the title in the plaintiff is plain and no adverse claim to the land he may waive the tort of a trespasser taking timber and sue in *assumpsit*; yet surely the law ought not to convert *assumpsit* into ejectment for title and *mesne* profits or trespass, and try title to land. *Baker* v. *Howell*, 6 Serg. and Rawle, 476, thus states the law: "An action for money had and received, will not lie for the price of sand taken from a sand bar to which both the plaintiff and the defendant claim title, and sold by the defendant." The reason is that *assumpsit* is for money had and received. The court said it would be strange to convert the trespasser into an agent and sue him for money he received for the same. The court said according to that theory *assumpsit* could be maintained in one state, where the defendant may be found, and if title could be tried the judgment would be conclusive in an action of ejectment for land situated in another state and thus settle title to land in that state. The court said, "It is not in the power of a party to change a local into a transitory action, and try title to land in another county *ex directo*, where the right to the land is the very foundation of the plaintiff's action. In *Brown* v. *Caldwell*, 10 Serg. & R. 114, 13 Amer. Dec. 660, was an action of replevin for slate taken from land. The action was disallowed. The court said that action 'is to try title to personal property and replevin will not lie for land.' Title to land cannot be decided in an action merely personal or transitory, no matter whether repleven, trover or *assumpsit*." The right to the slate depended on title. We find in *King* v. *Mason*, 42 Ill. 223, 89 Am. Dec. 426, the holding: "Title to real estate cannot be tried in action of *assumpsit*." In note in that case, 89 Am. Dec. 429, we find the proposition that a disseisee, "until he has regained seisin and possession by judgment or entry has no such interest in the land as will give him an interest in the trees which have been severed therefrom and sold during the continuance of the disseisin; and of course he has no such interest in the

money for which they were sold as will enable him to maintain *assumpsit* for money had and received. *Bigelow* v. *Jones*, 10 Pick. 161. See *Baker* v. *Howell*, 6 Serg. & R. 476." *Miller* v. *Miller*, 7 Pick. 135, 19 Amer. Dec. 264, holds that an action of *assumpsit* for trees taken from land and sold will lie, provided that no question is made in regard to the title of the land. "In suits for timber cut and removed, as in this case, the true rule, so far as the title to the land is concerned, is this: The plaintiff out of possession cannot sue for the property severed from the freehold, when the defendant is in possession of the premises from which the property was severed—holding them adversely, in good faith, under claim and color of title—in other words: The personal action cannot be made the means of litigation and determining the title to the real property as between conflicting claimants." *Helleck* v. *Mixer*, 16 Cal. 574. The same principle will be found in 4 Cyc. 321. In *Lewis* v. *Robinson*, 10 Watts 338, a party brought *assumpsit* to recover money for land claimed by him, but sold by the defendant. The title of the parties to the land was in contest. It was held that *assumpsit* would not lie, "although the plaintiff may have had a good title to it." "If the occupancy of a trespasser, who severs trees or stone from the land of another and converts the property taken to his own use, is such as to create an adverse possession, *assumpsit* does not lie for the value of such property, for it is a settled principle that title to land cannot be tried *ex directo* in transitory actions." *Downs* v. *Finnegan*, 58 Min. 113, 49 Am. St. R. 488. *North Haverhill* v. *Metcalf*, 63 N. H. 427, clearly sustains this holding. *Mather* v. *Trinity Church*, 8 Amer. Dec., in full opinion and note so holds. For this reason, as the right to those trees depended absolutely on title this action cannot be maintained. The plaintiff must sue in ejectment for title, and *mense* profits or trespass, if he has title. Note in 89 Am. Dec. 429, 430.

Therefore, instructions Nos. 2, 7 and 8 for the plaintiff were erroneous because they submitted the question of title to the land to the jury; because the title could not be at all tried in the action.

Complaint is made of the action of the court in allowing a question to be put to Parks as a witness as to whether or not he had title to the land at the time the chancery suit and

ejectment were instituted and prosecuted, and to his giving this answer: " Yes, sir; I did. Yes, sir; I had at the time and all through the pendency of the suit, and have yet. " This is the mere opinion of Parks. The question of title depends upon documents and their legal force and facts. The question is whether a given state of documents and facts does, *in law*, confer title; but here Parks is allowed to give his *ipse dixit*, his mere conclusion or opinion. This is error.

Plaintiff's instruction No. 3 told the jury that the recordation of the deed from Bennett to Parks gave the defendants notice of the title of Parks, and therefore the defendants could not be innocent purchasers for valuable consideration without notice of Parks' title. That meant that such notice would affect the defendants so that they could not buy the timber from Sterne. This instruction is erroneous. These parties claim by adverse title. The record of a deed is notice to purchasers and creditors from the *same* grantor who made the deed. It has no effect at all on one purchasing from another party. Though the defendants had notice of that deed, actual or constructive, or both, that had nothing to do with this case. Sterne had one title, Parks another hostile one. It will not do to say that when one man purchases land ·from one claimant; another cannot purchase the same land from a hostile claimant, simply because he had notice of the other man's purchase. The very letter of section 10, chapter 74 of the Code, is that " A purchaser shall not under this chapter, or chapter 75, be affected by the record of a deed or contract made by a person under whom his title is not derived." *Hoult* v. *Donahue*, 21 W. Va. 294. " Constructive notice, by recordation of deeds and other instruments, is operative only among parties claiming rights under the same title. Between claimants under distinct and hostile titles, notice is ordinarily immaterial and inoperative." *Webb* v. *Ritter*, 60 W. Va. pt. 15, p. 195. This instruction not only puts bad law, but is objectionable also in that it went to support Parks' claim of title to the land, which is inadmissible in *assumpsit* where there is conflict of title. For two reasons it had nothing to do with the case.

Another point. If title could be investigated in such an action, it might be ( I say it might be ) that possession, being *prima facie* evidence of title, a party in possession and an-

other party takes and sells timber from the land, the party in possession can recover on title shown *prima facie* by mere possession. Of course, the defendants were in possession when the timber was cut. The plaintiff, Parks, would assert that he was in possession, and not showing actual physical possession otherwise he would say that the declaration in ejectment would supply this proof, because it alleges that its defendants entered into and withheld the possession from Sterne. The plaintiff's instruction No. 5 says that that declaration estopped the defendants in this action to deny that Parks was in actual possession. This instruction is erroneous and for at least one reason. First, it makes that declaration prove Parks' actual physical possession conclusively. Here we have the record in another suit used to prove an admission of possession. It is not conclusive; it is no absolute estoppel. In no view could it be used as anything but an item of evidence rebuttable by evidence. I think authorities given in *Hast* v. *Railroad Co.*, 52 W. Va., on p. 407, will show this. There it is stated upon authority that, "The pleadings of a party in one suit may be used in evidence against him in another, not as an estoppell, but as proof open to rebuttal and explanation." But this instruction made it a conclusive estoppel. *Tabb* v. *Cabell*, 17 Grat, 160, is clear on this point.

We think from principles above stated that the court erred in refusing defendants' instruction No. 3, telling the jury that the plaintiff must have good title. We think the court erred in refusing defendants' instruction No. 4, telling the jury that the mere deed to Parks from Bennett, itself conferring no title, he could only get title under it by actual possession for the time required for it by the statute. We think the court should have given the defendants' instruction 10 and 11, saying that to make such contract as is claimed by the plaintiff binding there must be offer and acceptance and that the mere inquiry by Parks of Morris what he was paying Sterne and the question by Morris to Parks whether he would take that price if the suits involving title should result favorably to Parks, did not constitute a complete contract. We think also No. 12 should have been given.

We think the insertion, as an important element in the case, in instructions for the defendants Nos. 3, 6 and 10 of

notice on the part of the defendants of Parks' adverse claim, was erroneous for the reasons above given. Such notice is immaterial. But as instructions Nos. 3, 4, 6 and 8 introduce the question whether Parks had good title, when that matter could not be tried in *assumpsit*, we think these instructions are not important to be considered. Really not proper for the case, as the action cannot be sustained owing to conflicting title, and only justified by the instructions of the plaintiff. If title could be tried they would be sound.

It follows that the court should have set aside the verdict and not rendered judgment on it.

Other matters are discussed in briefs, but they are irrelevant to the case, and any expression upon them would be *obiter*, since it being a case dependent on conflict of title to land the action of *assumpsit* does not lie.

Our conclusion is to set aside and reverse the verdict and judgment, and remand the case for a new trial.

*Reversed.     Remanded.*