# CHARLESTON.

### OLIVER ALLEN v. J. M. SIMMONS

Submitted April 11, 1922.     Decided April 18, 1922.

1. SALES—*Seller is Excused from Tendering Delivery, Where Buyer Notifies that he Will Not Accept.*

   Where the buyer of merchandise under an executory contract notifies the seller that he will not receive the same if shipped to him, the seller is excused from tendering delivery. (p. 777).

2. SAME—*Where Buyer Asks Seller to Cancel or Resell, and is Notified that Resale Must be at a Loss, Seller, After Reasonable Time May Resell; on Buyer's Default Seller May Recover Difference Between Contract Price and Proceeds of Resale, With Expenses.*

   Where one enters into an executory contract for the purchase of personal property, and subsequently asks the seller

to cancel the contract; or, if he cannot do this, to resell the property for him, and the seller declines to cancel the contract, but does undertake to resell the property, and subsequently advises the buyer that it cannot be resold except at a loss, and demands that the buyer make some disposition of it, to which demand the buyer makes no response, the seller is justified within a reasonable time in reselling said property at the market price for the buyer's account, and is entitled to recover in an action upon the contract the difference between the purchase price and the amount received by him for the property, together with any expenses which he may have incurred in storing the property, or in making such resale. (p. 779).

3.   APPEAL AND ERROR—*Appellate Court Will Not Enter Judgment, Nothwithstanding The Verdict on Issue Joined.*

A judgment *non obstante veredicto* must be based upon the merits of the case as disclosed by the pleadings, and not in any sense upon the evidence produced upon the trial. (p. 779).

Error to Circuit Court, Brooke County.

Suit by Oliver Allen against J. M. Simmons. Judgment for defendant, and plaintiff brings error.

*Reversed and remanded.*

*Erskine, Palmer & Curl,* for plaintiff in error.
*R. L. Ramsey* and *W. S. Wilkin,* for defendant in error.

RITZ, JUDGE:

This was a suit to recover damages for the breach of a contract for the sale of certain feed by the plaintiff to the defendant. A trial of the case in the court below resulted in a judgment in favor of the defendant, which the plaintiff seeks to reverse by this writ of error.

The plaintiff is a grain and feed broker, having his place of business at Coraopolis, Pennsylvania. The defendant was engaged in the retail mercantile business at Follansbee, West Virginia, at the time of the transactions involved in this litigation. On the 14th of March, 1918, plaintiff's travelling salesman took an order from the defendant for ten tons of Dixie hen feed at $77.00 a ton, and 25 tons of Dixie horse and

mule feed at $66.00 a ton, to be shipped May 1st, and on April 12th the same travelling salesman took from the defendant another order for one car of Dixie horse and mule feed at $59,50 per ton, to be shipped in June. It seems to be conceded that this meant 30 tons, inasmuch as this was the minimum amount which could be shipped as a carload. These orders were subject to confirmation before becoming binding contracts. The plaintiff testifies that he confirmed the orders upon their receipt, and immediately purchased from the manufacturer in East St. Louis the feed to fill the same. This feed is a patent production, and could only be secured from the one manufacturer. On April 29, 1918, the defendant wrote to the plaintiff that he was going out of business, and requested the plaintiff, if convenient, to cancel the orders which he had theretofore given for feed; and further stating that if that was not satisfactory to let him know and he would make some other disposition and give further instructions. On May 3d the plaintiff replied to this letter advising that he had no place where he could place the shipment for feed ordered by the defendant, but advised that he would have his travelling salesman see if he could make some disposition of it, advising, however, that feed was hard to resell as the market was somewhat easier and purchasers were very timid. He also requested the defendant to see if he could not make some disposition, suggesting that he might get his successor to handle the two cars. The plaintiff did attempt, as is shown, to make some disposition of these cars, as requested by the defendant, but was unable to do so, and on June 11th wrote to the defendant insisting on him taking the shipments, or making some disposition of them. In reply to this letter the defendant, on June 13th, wrote to the plaintiff that he had theretofore given notice that he was going out of business and cancelled his orders, and directed the plaintiff not to consign any shipments to him, for he was not in a position to take care of them. On June 18th the plaintiff again wrote to the defendant insisting that he give directions for the disposition of the two cars of feed, advising that the plaintiff had no place where he could dispose of them,, and that he had them on hand inasmuch as

he had to protect the orders. The letter concluded by insisting on the defendant taking the feed or making some disposition of it. To this letter the defendant made no reply, and after waiting until July 1st the plaintiff got the manufacturer to take back the feed at the then market price, which was considerably less than the price at which it had been sold to the defendant. This suit was then brought to recover the difference between the price at which the plaintiff sold the feed and the contract price, as well as some charges for storage and other services.

Upon the trial of this action the defendant attempted to set up by way of recoupment damages which he claims accrued to him by reason of an inferior quality of feed furnished to him by the plaintiff prior to the time these orders were given. The court declined to allow this to be done, and the defendant makes some complaint of this action of the court in his brief. Clearly the court was right in this as damages, in order to be proper matter of recoupment, must grow out of the contract involved in the litigation.

It is a little difficult to understand how the jury arrived at the verdict returned in this case. The defendant made no real defense to the cause of action asserted against him. He seeks to justify the judgment now upon the theory that the orders were given subject to confirmation by the plaintiff, and that there is no proper evidence that they were ever confirmed, that there is no proof of any proper measure of damages, and that the plaintiff gave to the defendant no notice of his intention to resell the feed before doing so, for any or all of which reasons he insists the judgment in his favor should be sustained.

Of course, it is quite well established that where an order is given, as was the case here, subject to confirmation by the seller, it does not become a binding contract until the same has been confirmed, and if this contention of the defendant found any support in the evidence it might be well taken. The plaintiff, however, testifies that he confirmed the orders, and the defendant's letter of April 29th is a tacit admission that this is so. In that letter he does not insist upon any right to withdraw the orders for lack of confirmation, but

simply requests that they be cancelled, if convenient to the plaintiff, clearly recognizing that they constitute a valid and binding contract. Further than this, as a witness in his own behalf, he does not deny the plaintiff's statement that the orders were confirmed.

He also argues that there was no proper proof upon which the jury could find any damages in favor of the plaintiff; that inasmuch as the first car was to have been shipped May 1st, and the other car in June, the measure of damages would be the difference between the contract price and the purchase price at the time and place of delivery, and inasmuch as it is not shown that the plaintiff ever tendered delivery at any time or place, or attempted to prove what the market price was at any other time than July 1, 1918, he was not entitled to any recovery. It must be borne in mind that the defendant's letter above referred to asking the plaintiff to cancel the orders started negotiations between the parties in an attempt to place these cars of feed somewhere else, and relieve the defendant of the obligation to take them, and this was a sufficient reason for not tendering delivery of the car which was to be shipped May 1st. Plaintiff was endeavoring to resell both cars to someone else, so that the defendant might be relieved of the contract, and the defendant, if he was acting in good faith, was doing likewise. On June 11th, the plaintiff, having failed to make such disposition of the cars, insisted upon the defendant taking them, or making some disposition of them, and in reply to this letter, on June 13th, the defendant for the first time declared that he would not accept the shipments. It is true, upon receiving this unequivocal declaration of the defendant plaintiff might have immediately sued for his damages, but he determined to give the defendant another opportunity to dispose of the cars of feed if he could do so. With this view he wrote him on June 18th insisting on him taking the shipments, and the defendant says that he made no reply to this letter, having come to the conclusion that he would allow the plaintiff to make such disposition as he desired of the feed. Defendant's counsel in argument insist that the plaintiff is not entitled to recover damages

because he testifies that the defendant never cancelled the contract; that he did not treat the letters of April 29th and June 13th as a cancellation of the contract. This argument seems to be based upon the theory that the plaintiff is not entitled to recover unless the contract was cancelled. This is not the theory of the plaintiff's action at all. The plaintiff is quite right in his testimony in insisting that there could be no cancellation of the contract after it had been made except by the mutual consent of the parties, or for some fraud or mistake. His action is based upon the damages sustained by him because the defendant refused to perform the contract.

There is no more merit in the defendant's contention that the plaintiff cannot recover because he did not notify the defendant that he was going to resell the feed. It may be stated under the facts in this case that the correspondence between the parties was authority to the plaintiff to make resale of this feed at the best price obtainable, and it appears from the evidence that he had made earnest efforts to that end, and did sell it at the market price on July 1st. The plaintiff did not treat the contract as finally broken on the part of the defendant until a reasonable time after he had forwarded his letter of June 18th insisting upon the defendant accepting the shipments or making some disposition of them. After waiting a reasonable length of time thereafter and receiving no reply from the defendant he treated the contract as broken and brought suit for his damages. Under the circumstances the plaintiff was not bound to accept the defendant's letter of June 13th as final, nor was he bound to make immediate sale of the feed in order to hold the defendant for any damages he might sustain.

The plaintiff insists that his peremptory instruction to find in his favor the amount claimed in his bill of particulars should have been given. There is no doubt but that the court should have instructed the jury to find for the plaintiff, but we cannot say under the evidence that the amount stated in the peremptory instruction is justified from the evidence. The items claimed in the bill of particulars amounting to $504.50, being the difference between the con-

tract price of the feed and the market price, the plaintiff was undoubtedly entitled to a verdict for. The other items, consisting of mill overhead charges and profit, carrying charges and commissions, we do not find that the plaintiff was entitled to recover from the evidence. What is meant by mill overhead charges and profits does not appear, nor is it shown what is meant by carrying charges. Of course, the plaintiff would not be entitled to recover any profit from the defendant in addition to the contract price, for the reason that the price at which the feed was sold to the defendant included the plaintiff's profit. If the carrying charges are for storage of the feed while the parties were trying to dispose of it, then it would be a proper item of damages. As to whether or not the item of mill overhead charges is or is not a proper item would depend on what goes to make it up. There being nothing in the evidence to inform us in regard to it, the jury would not be justified in returning a verdict therefor. As the case was presented to the jury without explanation of the items above referred to, the court should have peremptorily directed the jury to find for the plaintiff the sum of $504.50.

The plaintiff insists that we render judgment here in his favor for the amount which he is entitled to recover, inasmuch as there is no defense made by the defendant. This court will not render a judgment in opposition to a jury's verdict, unless the case is such that the pleadings demand it. Where a determination of the questions involve a consideration of the evidence in a case in which an issue has been joined, this court will not render a judgment *non obstante veredicto*. *Zinn* v. *Cabot*, 88 W. Va. 118, and authorities there cited.

Our conclusion is to reverse the judgment, set aside the verdict of the jury, and remand the cause for a new trial.

*Reversed and remanded.*