# CHARLESTON.

## OLIVER ALLEN v. J. M. SIMMONS ETC.

Submitted September 30, 1924.   Decided October 7, 1924.

1.  PRINCIPAL AND AGENT—SALES—*Sale by Traveling Salesman Not Binding Until Buyer's Offer Accepted; Acceptance Must be Communicated.*

    Where a traveling salesman secures from a buyer a written offer to purchase goods "subject to confirmation," there is no contract binding upon the buyer and the salesman's principal until the latter accepts the offer and communicates such acceptance to the buyer. (p. 322).

2.  SALES—*Acceptance of Offer to Purchase Must be Materially Identical Therewith and Unconditional; Prior to Unconditional Acceptance, Buyer's Offer May be Withdrawn.*

    An acceptance, to be effectual, must be identical with the offer on all material points and unconditional. Prior to such acceptance the buyer is at liberty to withdraw his offer. (p. 323).

Error to Circuit Court, Brooke County.

Action by Oliver Allen against J. M. Simmons. Judgment for defendant, and plaintiff brings error.

*Affirmed.*

*Erskine, Palmer & Curl,* for plaintiff in error.
*R. L. Ramsey* and *W. S. Wilkin,* for defendant in error.

MEREDITH, PRESIDENT:

Plaintiff, the seller, sued in assumpsit, to recover damages for defendant's breach of a contract for the sale and purchase of a quantity of feed. The first trial of the case in the circuit court resulted in a judgment for defendant, which judgment was reversed by this court in our opinion appearing in 90 W. Va. at page 774, 111 S. E. 838. Upon re-trial defendant obtained a second verdict and judgment, and the case is again before us on writ of error.

As disclosed by our former opinion, plaintiff's salesman, on March 14th and April 12th, 1918, secured two orders from

defendant for the purchase of approximately 10 tons of hen feed and 55 tons of horse and mule feed, at stipulated prices, subject to confirmation. The orders were reduced to writing and mailed to plaintiff. Plaintiff contended before and contends now that the order or offer of defendant was properly confirmed and accepted by plaintiff, and that owing to defendant's subsequent unauthorized refusal to accept the feed, defendant is liable for the difference between the price agreed upon and the proceeds realized by plaintiff from a resale thereof on a declining market. Defendant contended before for three propositions: (1) that there was no evidence of proper confirmation of the sale by plaintiff; (2) that there was no proof of any proper measure of damages; and (3) that plaintiff gave defendant no notice of his intention to resell. We found against the defendant on all of his propositions, and held in effect that on the record presented, plaintiff was entitled to a directed verdict for an amount which we fixed in the opinion.

Many of the facts are unchanged by the present record, and since they are unchanged, it will be necessary for those interested to look to our former opinion for much of the case. We shall note here certain distinguishing and controlling differences in the two records. Formerly, the plaintiff testified that he confirmed the offers upon their receipt, and immediately purchased the feed from the manufacturers in East St. Louis. This was not denied by defendant. Plaintiff now asserts the same propositions, and the manner of defendant's renunciation of the contract appears substantially the same as before, but defendant states in his testimony and his counsel argue in their brief that plaintiff did not communicate his confirmation of the contract to defendant prior to the latter's cancellation of his offer; that therefore there was no binding bargain. This and a proposition as to the want of proof of a fall in the market at the date of the resale constitute the present defense.

The copies of defendant's offers show that the order of April 12th was to be shipped in June, and the order of March 14th was to be shipped May 1st, to defendant at Follansbee, West Virginia, and they bear the stipulation "Subject to

Confirmation.'' While plaintiff insisted in both trials that he confirmed the orders promptly, he has introduced into this record a copy of his letter confirming the order of March 14th. It is dated March 16, 1918.

Plaintiff testifies he could not find the letter confirming the order of April 12th, but says it was similar to the one produced. Plaintiff's salesman, Stone, who took the orders, states that defendant showed him the confirmations. Defendant, on the other hand, denies that he ever received any confirmation of his offers. On April 29, 1918, defendant wrote plaintiff as follows:

"I am going out of the feed business and ask you if convenient for you to please cancel the orders I have with you for any future shipments.

"If this is not satisfactory please inform me so I can make some disposition and give further instructions.

"Thanking you in advance for the favor and for past favors and appreciating the pleasant dealings we have had with each other, I am,

"Yours truly,
"J. M. SIMMONS."

On May 3d plaintiff replied to this letter in effect advising that he had no prospective purchasers with whom he could place defendant's orders, but advised that he would have his traveling salesman see if he could make some disposition of them, advising, however, that feed was hard to resell as the market was somewhat easier and purchasers were very timid. He also requested the defendant to see if he could not make some disposition, suggesting that he might get his successor to handle the two cars.

The next letter appearing in the present record is one dated June 13th, from defendant to plaintiff, as follows:

"In reply to your letter of June 11, regarding feed which you had booked for me, I gave you notice that I was going out of business and cancelled my orders on all purchases.

"You say you are taking the liberty to order a car forward. You will please not consign any shipments to me for I am out of the business and not in position to take care of them in any way."

Though not in the record, at least part of the contents of plaintiff's letter of June 11th may be surmised from defendant's reply.

Upon the showing made plaintiff says the contract was confirmed and binding upon defendant. Defendant says no confirmation was communicated to him prior to his withdrawal of his offer. On this issue plaintiff relies strongly upon our former opinion. At that time, as stated, the record included no copy of plaintiff's confirmation, and, upon the oral evidence, there being no express denial of confirmation by defendant, we said:

> "The plaintiff, however, testifies that he confirmed the orders, and the defendant's letter of April 29th is a tacit admission that this is so."

If there had been no change in the record since we wrote the above words, plaintiff's argument would be forceful indeed. To our minds, however, we now face a different case, different in a respect apparently not fully recognized by counsel. We refer to the letter of confirmation now before us, and which was not shown at the first hearing of the case. Plaintiff bases his whole case of confirmation upon the sending of that letter and the one similar to it which he could not find. His salesman states he saw the confirmations in defendant's possession. Defendant denies receiving them. This was a clear issue of fact. But the thought occurs to us: suppose defendant did receive the confirmations in question, was the contract then sealed and beyond his recall? To answer this inquiry reference must be had to the writings themselves. The offer of April 12th reads:

"OHIO VALLEY GRAIN & FEED CO.
                Coraopolis, Pa.  4-12-1918.
M   M. J. Simmons        Ship to   Follansbee
P. O..................When   June
How Ship   P. R. R.
Terms   Citizens Bank
        1 Car Dix H & M      5950

> SUBJECT TO CONFIRMATION
> J. M. Simmons, Buyer
> C. W. Stone, Salesman
> The Simple Account Sales Book Co., Fremont,
> Ohio.''

The order of March 14th is like the one above, except as to the kind and quantity of feed, and the date of the shipment.

We stated above that the confirmation, upon the language of which the plaintiff relies, is dated March 16, 1918. For the present inquiry its full contents must be reviewed. Omitting the printed heading the letter reads:

> "Coraopolis, Pa., March 16, 1918.
> Mr. J. M. Simmons,
> Follansbee, W. Va.
> Dear Sir:
>      We herewith acknowledge order
>      For 10 tons Dixie Hen at 77.00
>            25 tons Dixie H & M at 60.00
> to be shipped May 1st, contingent upon strikes, car shortage, embargoes, railroad delays and all other causes beyond our control.
> Shipments to be made via P. R. R.
> Board of Trade weights final
> Terms: Draft & B/L Citizens Bank.''

There is a well established principle of law that to effectuate a contract of sale, there must be both a proposal and an acceptance of that proposal. *Parks* v. *Morris, Layfield & Co.*, 63 W. Va. 51, 59 S. E. 753. In the present case defendant's offer was made to plaintiff's agent, his salesman, "subject to confirmation." The authority of traveling salesmen, even though there be no such express limitation as appears on the present offers, is, as we conceive it, more often merely to solicit orders and transmit them to their employers than to actually bind contracts of sale for them.

> "Authority merely to solicit orders and transmit them to the principal, as is usually the case with the so-called 'drummer' or traveling solicitor, clearly confers no power to accept the orders

so taken or to make a binding contract of sale. Such a power may, however, be conferred expressly, or it may arise by implication from a course of dealing, or from the general custom of the trade.'' 1 Mechem, Agency 2d ed. §861. Accord: *Hampton Mills* v. *Hershfeld,* 201 N. Y. S. 556.

And although we have noticed no case in which the words ''subject to confirmation'' were used (except where the expression was defined by the custom of the trade as in *Johnston* v. *Fairmont Mills,* 129 Fed. 74), we have no doubt that the words were used here as meaning in effect, subject to the approval and acceptance of the seller,—approval of the salesman's act and acceptance of the buyer's offer. Where either of the latter words have been used, the decisions are uniform that there is no contract prior to the approval and acceptance by the principal. *Cable Company* v. *Hancock,* 2 Ga. App. 73, 58 S. E. 319; *Bronson* v. *Improvement Co.,* 135 Mo. App. 483, 116 S. W. 20; *Crowder* v. *Tolerton & Warfield Co.,* 92 Neb. 250, 138 N. W. 151. To consummate the bargain, it is manifestly essential, however, that the confirmation correspond to the offer at every essential point. There must be a complete meeting of minds on all material matters, leaving nothing for future negotiations. The offeree may not by a modified acceptance impose a new condition upon the offerer. 1 Page, Law of Contracts, p. 250; 13 C. J. p. 281; 6 R. C. L. 608; 1 Williston, Contracts, p. 57. Does the plaintiff's acceptance here meet this requirement, or did it introduce into the proposed bargain some new element necessitating the assent of the offerer? Again attention must be directed to the form of the offers and to the letter of confirmation relied on by plaintiff. Do we find anything in defendant's offer to the effect that shipment on the day named is to be contingent upon strikes or the other events mentioned in the confirmation? Is there anything in defendant's offer by which we can be assured that plaintiff's proposal that Board of Trade weights are to be final is satisfactory to defendant? We find nothing of the sort. It may be that in the light of the custom of the trade both of these seeming modifications of the offer were not in

fact material departures from the original proposal; but all this record shows is that these parties had had business dealings before, there is nothing as to the conditions prevailing. Our view is, and we think it is unassailable, that a proposal to buy feed to be shipped on a fixed date is quite different from a proposal to buy feed to be shipped on a fixed date, unless prevented by causes beyond the seller's control. That is well illustrated by the case of *Wheeling Mold, etc., Co.* v. *Wheeling Steel etc. Co.*, 58 W. Va. 62, 51 S. E. 129. We think plaintiff's confirmations changed materially the terms of defendant's offers. Under this view of the case, it becomes apparent that it is immaterial whether the confirmations relied upon actually reached defendant or not. It is thus wholly unnecessary to discuss defendant's argument that actual notice to him was an essential element of a necessary communication of plaintiff's acceptance. Plaintiff's acceptance of defendant's proposal was not sufficient to consummate the bargain, and defendant had the right, for any reason he might choose, or for no reason at all, to withdraw his offers to purchase. *Minneapolis Ry Co.* v. *Columbus Rolling Mills.* 119 U. S. 149, 7 Sup. Ct. 168, 30 L. Ed. 376. A sufficient intention to withdraw them was indicated by defendant's letter of April 29, 1918. Having found the true nature of the confirmations upon which plaintiff relies, what formerly appeared to be a tacit admission on defendant's part, is now but a courteous withdrawal of his former proposal. He never abandoned this position.

As we said in the beginning, counsel have not considered the position we have taken, but to us it seems the controlling issue in the case. It also renders unnecessary a discussion of plaintiff's objections to certain evidence and instructions. Defendant withdrew his offers prior to acceptance thereof by plaintiff; no verdict other than one for defendant could be sustained on the record. We therefore affirm the judgment.

*Affirmed.*