STATE ex Rel. NAGLE, Attorney General, Relator, *v.* STAFFORD et al., Respondents.

BRUCE, Appellant, *v.* STAFFORD, Respondent.

(No. 7,296.)

(Submitted June 5, 1934.  Decided June 20, 1934.)

[34 Pac. (2d) 372.]

*Mr. E. C. Mulroney* and *Mr. S. C. Ford,* for Appellant, submitted a brief and argued the cause orally.

*Messrs. Toomey & McFarland, Mr. H. K. Anderson* and *Mr. R. Lee Word, Jr.,* for Respondent, submitted a brief; *Mr. E. G. Toomey* argued the cause orally.

*Mr. Raymond T. Nagle,* Attorney General, Relator, appearing *pro se.*

## Opinion: PER CURIAM.

This is a *quo warranto* proceeding brought by the Attorney General against A. H. Stafford and A. P. Bruce, who severally claim the office of Commissioner of Agriculture, Labor and Industry.

Section 1 of Article XVIII of the Constitution of Montana provides: "The legislative assembly may provide for a bureau of agriculture, labor and industry, to be located at the capital and be under the control of a commissioner appointed by the governor subject to the confirmation of the senate. The commissioner shall hold his office for four years, and until his successor is appointed and qualified; his compensation shall be as provided by law."

Pursuant to this authority, the Seventeenth Legislative Assembly in its regular session created the Department of Agriculture, Labor and Industry (sec. 3555, Rev. Codes 1921), and provided in section 3556 that: "The chief executive officer of the department of agriculture, labor, and industry, hereinafter referred to as the commissioner of agriculture, shall be a commissioner of agriculture, to be appointed by the governor, by and with the consent of the senate, and such

commissioner shall hold office for a term of four years or until his successor is appointed and qualified.''

The bond, salary and expenses of the commissioner, with a provision that he shall maintain his office at the state capitol, are prescribed by section 3557, Id. The Commissioner of Agriculture is ex officio a member of the Industrial Accident Board and its treasurer. (See secs. 2819, 2821 and 2822, Id.) The treasurer's bond, as fixed by the Governor, is $10,000.

The Commissioner of Agriculture, under Chapter 27, Laws 1929, is made ex-officio commissioner of farm storage, and is required to furnish a surety bond in the sum of $20,000. (Secs. 2 and 3, p. 40, Chap. 27, Laws 1929.)

On April 5, 1929, Honorable John E. Erickson was the duly elected, qualified and acting Governor of Montana, and upon that day he executed and filed in the office of the Secretary of State of Montana a written instrument appointing A. H. Stafford Commissioner of Agriculture, the appointment to become effective the first day of June, 1929, and to be for the term ending the first day of April, 1933. On April 8, 1929, an appropriate commission was issued to Stafford, and he immediately assumed the duties of Commissioner of Agriculture, Labor and Industry and has ever since at all times continued to administer the same.

Stafford furnished the several bonds required of him, to-wit, one as Commissioner of Agriculture, Labor and Industry in the sum of $5,000, one as treasurer of the Industrial Accident Board in the sum of $10,000, an additional one as treasurer of the Industrial Accident Board in the sum of $15,000, and one as ex-officio commissioner of farm storage in the sum of $20,000. All these bonds were approved by Governor Erickson, were filed in the office of the Secretary of State, and the same, except as presently to be noted, have remained in full force and effect.

On January 16, 1933, it was made to appear to the Board of Examiners that the Farm Storage Act was inoperative, and that there was therefore no necessity for the continued payment of premiums upon the bond of Stafford to secure the

faithful performance of his duties as farm storage commissioner; therefore, by action of the Board of Examiners the surety upon that bond was released from the liability for any default of Stafford, the principal, occurring after January 13, 1933.

The Twenty-Second Legislative Assembly met on the first Monday in January, 1931—that being the first session since the appointment of Stafford—and on January 8, 1931, the senate confirmed the appointment of Stafford as Commissioner of Agriculture, Labor and Industry.

At the regular election held in the state of Montana upon the eighth day of November, 1932, Honorable J. E. Erickson was re-elected Governor, and Honorable Frank H. Cooney was elected Lieutenant-Governor, of the state of Montana. Each qualified as such officer and assumed his respective duties. On March 13, 1933, Governor Erickson executed and caused to be filed in the office of the Secretary of State a written instrument re-appointing A. H. Stafford to the office of Commissioner of Agriculture, Labor and Industry for a term of four years commencing April 1, 1933, and thereafter a commission issued out of the office of the Secretary of State in certification of such appointment. Thereafter, and on the same day, Governor Erickson resigned his office by filing his resignation in writing in the office of the Secretary of State. On March 14, 1933, Stafford subscribed to the constitutional oath before the Secretary of State.

In view of the conclusion at which we have arrived, it is not necessary to narrate the facts relating to the filing of any bonds after March 13, 1933, when Governor Erickson made the second appointment of Stafford.

Immediately upon the resignation of Governor Erickson, Lieutenant-Governor Cooney assumed all the powers and duties of the office of Governor, and ever since, except when absent from the state on official business, has continued to occupy the office, perform the duties, and exercise the powers of the Governor of the state.

On the 27th of November, 1933, Governor Cooney convened in extraordinary session the Twenty-Third Legislative Assembly, and on the twenty-ninth day of December, 1933, he as Governor transmitted to the senate for confirmation a message containing the names of persons appointed to public office in the state of Montana during the period between the end of the regular session and the commencement of the extraordinary session, but the instrument did not contain the name of A. H. Stafford. On January 6 the Secretary of State was requested to furnish to the senate the complete list of all appointments filed in his office since the adjournment of the regular session of the Twenty-Third Legislative Assembly and which had not been transmitted to the senate for confirmation. The Secretary of State immediately furnished the list required, which included the name of A. H. Stafford. Thereafter in the senate on the ninth day of January, 1934, a motion was made to confirm the appointment of A. H. Stafford as Commissioner of Agriculture, Labor and Industry, which, being duly seconded, was carried by the following vote: Ayes, 27; noes, 26; absent, 2; vote passed, 1.

It is alleged by the relator that thereafter, and on January 9, 1934, the senate caused to be written a communication addressed to the Governor and signed by C. J. McAllister, Secretary of the Senate, which reads as follows: "In accordance with action taken by the Senate January 9, 1934, I beg to advise you that Hon. A. H. Stafford appointed March 13, 1933, for the term ending April 1, 1937, as Commissioner of Agriculture, was confirmed." Relator alleges that he is unable to aver with exactitude whether or not the communication was received at the office of the Governor before the senate reconsidered the confirmation.

It appears that on January 10, 1934, the senate reconsidered its action confirming the appointment of Stafford, and on January 12, 1934, it was duly moved, seconded and carried that the further consideration of the appointment of Stafford to the office of Commissioner of Agriculture, Labor and Industry be indefinitely postponed. It also appears that on

January 8, 1934, Governor Cooney transmitted to the senate a purported appointment of one J. T. Kelley to the office of Commissioner of Agriculture, which the senate refused to confirm. Like action was taken by the senate on January 17, 1934, upon a purported appointment of Robert J. Kelly to the office of Commissioner of Agriculture for the term ending April 1, 1937. About February 1, 1934, and after the Legislative Assembly had adjourned, the Governor attempted to appoint A. P. Bruce to the office of Commissioner of Agriculture for the term ending April 1, 1937. Mr. Bruce subscribed to the constitutional oath of office and filed the same in the office of the Secretary of State, and thereafter executed a bond in the sum of $5,000 to secure the faithful performance of his official duties as Commissioner of Agriculture, and the bond was approved by Governor Cooney on February 2, 1934, and was deposited in the office of the Secretary of State on the same day. On the last-named date, at 9 o'clock in the morning, Mr. Bruce appeared in person at the office of the Commissioner of Agriculture, Labor and Industry and demanded possession of the office from Mr. Stafford, who was then in possession thereof. Mr. Stafford refused to deliver possession to Mr. Bruce, and ever since has remained in possession and in the performance of the duties thereof, claiming title to the office by reason of the appointment made by Governor Erickson on March 13, 1933, and also upon the theory that he was confirmed by the senate. He also claims that there is no vacancy in the office, and that it is his duty by command of the Constitution to continue to discharge the duties of Commissioner of Agriculture, Labor and Industry until his successor is appointed and qualified.

Mr. Bruce claims title to the office by reason of the appointment attempted to be made by Governor Cooney on February 1, 1934. To settle the controversy the Attorney General brought this proceeding in the district court of Lewis and Clark county. Bruce filed an answer and cross-complaint which, after admitting some of the paragraphs of the Attorney General's complaint, pleads a cross-complaint against the claim

of Stafford. Stafford, after his demurrer thereto had been overruled, filed an answer to the complaint of the Attorney General and set forth his claims to the office. He also demurred to the answer and cross-complaint of Bruce, which demurrer the court sustained, giving Bruce ten days in which to plead further. Bruce replied to the answer and claim of Stafford, and Stafford demurred to the reply of Bruce; the court sustained the demurrer. Thereupon Bruce, through his counsel, announced that he would stand upon his answer and cross-complaint to the complaint of the Attorney General, and upon his reply to the answer and claim of Stafford, and refused to plead further. Thereupon, on motion of counsel for Stafford, the default of Bruce was duly entered. Counsel for Stafford then presented a motion for judgment on the pleadings in favor of Stafford confirming him in the office and denying the claim of Bruce thereto. The court thereupon entered judgment in favor of Stafford, and therein, after reciting the various procedural moves by the respective parties, stated that, as appears on the whole record, the claim of Stafford to title to the office of Commissioner of Agriculture of the state of Montana is valid and that Stafford is now, and at all times since the fifth day of April, 1929, has been, the duly and regularly appointed, confirmed, and qualified and acting Commissioner of Agriculture of the state of Montana pursuant to and in conformity with the provisions of section 1 of Article XVIII of the Constitution of the state of Montana, and Chapter 216 of the Laws of 1921 of the state of Montana, now sections 3555 to 3649, inclusive, Revised Codes of 1921, as amended, declaring that "the said A. H. Stafford is hereby confirmed in his office as Commissioner of Agriculture of the state of Montana and as chief executive officer of the department of Agriculture, Labor and Industry of the state of Montana, and entitled to hold the same and to exercise the powers thereof, perform the duties appertaining thereto, and receive the emoluments, salaries, and prerequisites thereunto belonging until his successor is duly and regularly appointed, commissioned, confirmed and qualified as required

284

by the Constitution and statutes aforesaid, and that the claim of the defendant Bruce to the office as appears on the whole record herein is invalid, void, without force or effect''; that the defendant Bruce ''has no right, title or interest in the office of Commissioner of Agriculture by reason of the alleged and purported appointment of him thereto on February 1, 1934, the same being the only claim asserted by the said Bruce to the said office.'' From this judgment the defendant Bruce appealed to this court.

In a *quo warranto* proceeding brought upon the application of the Attorney General, if there be more than one defendant, in order to prevail as against such a proceeding, a defendant must convince the court that he is entitled to hold the office upon his own strength and not upon the weakness of his adversary. As appears from the statement foregoing, Mr. Stafford defended upon two grounds: (1) That it was his duty to hold the office and discharge the duties thereof until another be appointed by the Governor, subject to the confirmation of the senate, and in the circumstances presented there was no vacancy; (2) that he was re-appointed by Governor Erickson on March 13, 1933, and was regularly confirmed by the senate for a period of four years commencing April 1, 1933.

It was contended by counsel for Bruce that Governor Erickson, in view of the fact that when he made the appointment of Stafford he intended to resign his office of Governor, could not thus tie the hands of his successor. This argument is not sound. Governor Erickson assumed office pursuant to his election on the first Monday of January, 1933, for a term of four years. At the same time Lieutenant-Governor Cooney assumed the office of Lieutenant-Governor for a term of four years. Upon the resignation of Governor Erickson, by express command of the Constitution the powers, duties and emoluments of the office for the residue of the term devolved upon Lieutenant-Governor Cooney. In the discharge of his duties Lieutenant-Governor Cooney is not enjoying his own term but is simply filling out Governor Erickson's. (Section 14, Art.

VII, Const.) He is the Lieutenant-Governor, performing the functions of Governor during the residue of the term. (*State ex rel. Lamey et al.* v. *Mitchell,* ante, p. 252, 34 Pac. (2d) 369.)

The defendant Bruce argues that Stafford may not rely on both sources of title to the office, but must of necessity be limited to the assertion of one of these claims only, and that in view of his conduct he may only press his right to the office under the re-appointment. The question is presented: May a defendant in a *quo warranto* proceeding allege in his pleadings two or more independent claims to the office to which his right is challenged?

Section 9587, Revised Codes 1921, provides: "The pleadings shall be as in other cases." The chapter of our Code relating to and regulating *quo warranto* proceedings containing this section has always been a part and parcel of our Code of Civil Procedure since the adoption of the first Code in 1895. It is said: "The better doctrine now is that the pleadings should conform as far as possible to the general principles and rules of pleading which govern in ordinary civil actions." (High on Extraordinary Remedies, 3d ed., sec. 710.) Manifestly, in this jurisdiction, all pleadings, including those of the defendants, in a *quo warranto* proceeding are within the rules relating to pleadings in ordinary civil actions.

A defendant may set forth as many defenses or counterclaims, or both, as he has, whether legal or equitable. (Sec. 9146, Rev. Codes 1921.) Inconsistent defenses may be pleaded when they are not so incompatible as to render the one or the other absolutely false. The test of the propriety of inconsistent defenses is whether or not the proof of one necessarily disproves the other. (*Downs* v. *Nihill,* 87 Mont. 145, 286 Pac. 410.) The proof of either claim made by Stafford to the office will not disprove the other.

It is generally held by modern authorities that the defendant may file different pleas or defenses in a *quo warranto* proceeding, as: (1) That he was elected or appointed at a particular time, which gives him title to hold over until his

successor has been selected and qualified; and (2) that he was elected or appointed for a new term, and, having qualified, holds by virtue of the new appointment or election, there being no repugnancy or inconsistency between the two claims. (High on Extraordinary Remedies, 3d ed., sec. 715; *People v. Stratton*, 28 Cal. 382; *State v. McDaniel*, 22 Ohio St. 354; *State ex rel. Worrell v. Peelle*, 124 Ind. 515, 24 N. E. 440, 8 L. R. A. 228.)

The defendant Bruce in support of his contention cites a number of cases wherein a result was reached not in accordance with our conclusion. None of these cases holds directly contrary to the rule announced herein. The results in these cases were due either to controlling statutes the like of which are not here present, as in the case of *State ex rel. Vanderveer v. Gormley*, 53 Wash. 543, 102 Pac. 435, or the nature of the action invoking only the limited jurisdiction of the court which did not permit an adjudication of all possible claims between the rival litigants (*Handy v. Hopkins*, 59 Md. 157), or where the only question involved was the right of the plaintiff to collect a salary as an officer, as in *Farrell v. City of Bridgeport*, 45 Conn. 191, or a case involving the liability of the sureties on an official bond of a county treasurer. (*County of Scott v. Ring*, 29 Minn. 398, 13 N. W. 181.)

The defendant Stafford was free to plead both titles to the office, and if under the admitted facts either was established, he was entitled to prevail in this action.

Defendant Stafford alleged in his answer that he is holding over under his original appointment pending the appointment, confirmation and qualification of a successor. The defendant Bruce in his reply to these allegations of Stafford alleges: "That for more than forty years last past the practice and custom has prevailed in the state of Montana that when the term of office of an appointive officer expires during a recess of the senate, the Governor of the state appoints a successor to such officer, and that the person so appointed to succeed the officer immediately qualified and entered upon his

official duties without waiting for his term to be confirmed by the senate.''

We have elsewhere decided herein that the defendant Stafford had the right to hold the office in question under our Constitution and statutes until his successor was appointed by the Governor, confirmed by the senate, and the qualification of the appointee.

The allegations of the defendant Bruce's reply stand admitted on the demurrer. Therefore, granting the truth of the allegations of the reply, does the construction of the Constitution and statutes alleged control the courts in interpreting the statutes and Constitution?

"It is elementary that a custom cannot vary the terms of, or operate to abrogate or repeal, a general statute." (*Ettien* v. *Drum*, 32 Mont. 311, 80 Pac. 369, 370.) "A course of practice founded upon a mistaken construction of a statute cannot have the force of law, no matter how long it has continued, unless there be a reasonable doubt as to the meaning of the particular provision upon which the practice is founded. Contemporaneous construction cannot abrogate a plain provision of law, or fritter away its obvious sense." (*State ex rel. Robinson* v. *Clements*, 37 Mont. 100, 95 Pac. 845, 846.) The specific provisions of the law furnish the guide, and not usage and custom. (*State ex rel. Broadwater Farms Co.* v. *Broadwater Elevator Co.*, 61 Mont. 215, 201 Pac. 687.)

This court, in the case of *State ex rel. Haire* v. *Rice*, 33 Mont. 365, 83 Pac. 874, 877, when speaking with reference to the contemporaneous construction given to a constitutional provision by the other co-ordinate departments of the state government, said: "Such construction can never abrogate the text or fritter away its obvious sense. And acquiescence for no length of time in a construction by the co-ordinate branches of government which has the effect of nullifying a provision of the Constitution will justify a court in adopting such construction unless it is the only reasonable one."

This court thirty years ago construed the meaning of a constitutional provision with reference to the holding over of an

officer after the expiration of his term where a successor had not been selected in the manner required by law, and there held that in such situation no vacancy arose whereby the power to appoint could be exercised by the appointing power. (*State ex rel. Chenoweth* v. *Acton*, 31 Mont. 37, 77 Pac. 299.) There was a reasonable interpretation of the constitutional provision in question other than the alleged contemporaneous construction, as is demonstrated by that decision of the court. If, as alleged, the contemporaneous construction was followed as applied to facts similar to those before us during the past thirty years, the departments of the state government were adopting a mistaken and erroneous construction at variance with the interpretation of like provisions by this court. In the light of the foregoing decisions the contemporaneous construction alleged cannot prevail.

What we have said herein applies to the particular facts before this court and is without application to all the situations described and enumerated in section 511, Revised Codes 1921.

As we have here seen, the judgment of the learned trial judge ignores all reference to the appointment of Stafford for the new term, but confirms his right to the office as a holdover, under his valid appointment of April 5, 1929, and "until his successor is duly and regularly appointed, confirmed and qualified," and holds that the claim of Bruce "is invalid, void and without force and effect." Is this treatment of the respective claims submitted justified by the Constitution and statutes of this state?

The Constitution provides that the appointment is "subject to the confirmation of the Senate." The general provision with respect to appointive state offices reads: "The governor shall nominate, and by and with the consent of the senate, appoint all officers whose offices are established by this Constitution." (Sec. 7, Art. VII.) The legislature, on the creation of the bureau in question, followed the wording of neither provision but declared that the Commissioner of Agriculture shall "be appointed by the governor, by and with the consent of the senate." (Sec. 3556, Rev. Codes 1921.) If

these three provisions differ in effect, the Constitution must prevail over the declaration of the legislature, and, as between the two constitutional provisions, the special provision must control. It was, therefore, under the authority vested in the Governor by section 1 of Article XVIII above, that on March 13, 1933, Stafford was appointed to succeed himself for a four-year term, beginning April 1, 1933. The question then arises as to its effect, assuming that Stafford did not file with the Secretary of State a bond approved by the Governor (sec. 469, Rev. Codes 1921), within thirty days after notice of his appointment (sec. 432, Id.). If such appointment entitled him to assume the duties of the office for the new term commencing April 1, 1933, his failure to file a bond as required might have created a vacancy in the office (sec. 511, subd. 9, Rev. Codes 1921) to be filled by the proper appointing power. (*State ex rel. Wallace* v. *Callow*, 78 Mont. 308, 254 Pac. 187.) This unquestionably would have been the result had the framers of the Constitution seen fit to repose the appointing power in the Governor alone, but the provision is that the appointment is "subject to the confirmation of the senate." "Subject to" means subservient or subordinate to (*Englestein* v. *Mintz*, 345 Ill. 48, 177 N. E. 746; *Byrne* v. *Drain*, 127 Cal. 663, 60 Pac. 433), and embodies the command that the act shall not be effective until the condition is complied with. Thus orders taken by a representative, "subject to confirmation" by his house, do not ripen into contracts until confirmed. (*Allen* v. *Simmons*, 97 W. Va. 318, 125 S. E. 86; *Royal Dairy Products Co.* v. *Spokane Dairy Products Co.*, 129 Wash. 424, 225 Pac. 412), and when a city council is authorized to extend and make changes in streets "subject to" the approval of the mayor, the changes cannot be made until the mayor has acted, or the time within which he is permitted to act has elapsed. (*Makemson* v. *Dillon*, 24 N. M. 302, 171 Pac. 673.) With reference to the phrase "with the advice and consent," this court has uniformly held that it likewise requires confirmation by the consenting body, and that an appointment made under such a provision is ineffective until confirmed. (*State ex rel. Sand-*

*quist* v. *Rogers,* 93 Mont. 355, 18 Pac. (2d) 617, and cases there cited.)

Thus it is apparent that the phrases used in the two constitutional provisions and that employed in the Act creating the Bureau of Agriculture do not differ in effect, but under each the appointments under consideration come within the general rule that "where a person is appointed to an office under a constitutional or statutory provision that the appointment may be made with the approval of some officer or body, such appointment must be approved before the person is legally entitled to the office, except in the case of such a vacancy in the office that the duties of the office are no longer being discharged." (Note, 17 Ann. Cas. 1011; *State* v. *Williams,* 222 Mo. 268, 121 S. W. 64, 17 Ann. Cas. 1006. See, also, *People* v. *Tyrrell,* 87 Cal. 475, 25 Pac. 684; *State* v. *Rareshide,* 32 La. Ann. 934; *State* v. *Dubus,* 9 La. Ann. 237; *Taylor* v. *Hebden,* 24 Md. 202; *Smoot* v. *Somerville,* 59 Md. 84; *Ash* v. *McVey,* 85 Md. 119, 36 Atl. 440; *Commonwealth* v. *Allen,* 128 Mass. 308; *Parish* v. *St. Paul,* 84 Minn. 426, 87 N. W. 1124, 87 Am. St. Rep. 374; *Brady* v. *Howe,* 50 Miss. 607; *State* v. *Bryson,* 44 Ohio St. 45, 8 N. E. 470; *State ex rel. Tredway* v. *Lusk,* 18 Mo. 333; 22 R. C. L. 433.)

However, since the expiration of his four-year term, beginning April 5, 1929, Stafford has been the incumbent holding over, under the express mandate of the Constitution "until his successor is appointed and qualified"; as such incumbent he was not required to file a new bond. When, as here, the Constitution and statute provide for such holding over, and the statute on the subject expressly provides that the liability on an official bond shall continue so long as the officer bonded holds the office (sec. 480, Rev. Codes 1921), the surety on the original bond must be presumed to have executed it with the law in mind, and to have assumed a liability equal to the possible duration of the officer's tenure in the office. (See note to *Baker City* v. *Murphy,* [30 Or. 405, 42 Pac. 133] 35 L. R. A. 88. See, also, 22 R. C. L. 514; *People* v. *Hammond,* 109 Cal. 384, 42 Pac. 36; *Akers* v. *State,* 8 Ind. 484; *State* v. *Wells,* 8 Nev. 105; *American Surety Co.* v. *Independent School District,*

(C. C. A.) 53 Fed. (2d) 178, 81 A. L. R. 1; Id., 284 U. S. 683, 52 Sup. Ct. 200, 76 L. Ed. 577; note, 81 A. L. R. 1–10.)

It may be that, had an appointee been confirmed while the senate was in session, Stafford would have been ousted as an incumbent, but the appointment of Bruce was not made until after the legislature had adjourned.

If follows that Bruce's appointment could only be made under the second grant of power found in section 7 of Article VII, above, to-wit: "If during a recess of the senate a vacancy occur in any such office, the governor shall appoint some fit person to discharge the duties thereof until the next meeting of the senate, when he shall nominate some person to fill such office." (See, also, sec. 515, Rev. Codes 1921.) If there existed a vacancy in the office at the time of Bruce's appointment, the appointee could have taken over the office, on qualifying, without waiting confirmation.

The framers of the Constitution left the task of defining the term "vacancy" to the legislature, and that body performed that duty by declaring that "an office becomes vacant on the happening of either of the following events before the expiration of the term of the incumbent:" (Sec. 511, Rev. Codes 1921.) The enumerated "events" include death, resignation, removal from office or from the state, failure to qualify and the like. Here the rule *"expressio unius est exclusio alterius"* applies; the enumeration is exclusive and, as Stafford was holding over under the express mandate of the Constitution "until his successor is appointed and qualified," there was no vacancy in the office. (*State ex rel. Chenoweth* v. *Acton,* 31 Mont. 37, 77 Pac. 299, and cases there cited.)

It is clear, therefore, that the pleadings contained sufficient facts which were undisputed to warrant the judgment rendered.

The judgment is affirmed. Remittitur forthwith.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MATTHEWS, STEWART and ANDERSON concur.

MR. JUSTICE ANGSTMAN, being absent, takes no part in the foregoing opinion.