STATE EX REL. DUNNE, RELATOR, *v.* SMITH, RESPONDENT.

(No. 3,977.)

(Submitted February 20, 1917. Decided March 5, 1917.)

[163 Pac. 784.]

*Quo Warranto* — *Counties* — *Office and Officers*—*Vacancies*—
*Appointment* — *Constitution* — *Title to Office* — *Collateral
Attack.*

County Offices—Vacancies—Appointment—Constitution.
   1.   The vacancies in county offices referred to in the last clause of
section 5, Article XVI, of the state Constitution, the appointees to fill
which shall hold until the next succeeding general election, are those
occurring after the fixed term has commenced, but before a general
election; and no appointment holds good beyond the next succeeding
general election, whether the interval between it and the fixed term be
great or small.

Same—County Commissioners—Anticipating Vacancy—Void Appointment.
   2.   An outgoing board of county commissioners may not, by anticipa-
tion, fill a vacancy in a county office which will not arise until the
incoming one shall take office.
   [As to existence of vacancy in office on taking effect of law creating
the same, see note in **Ann. Cas. 1915D, 127.**]

Same—Case at Bar.
   3.   S., the incumbent of the office of county assessor, was re-elected
in November, 1916, qualified for the second term, but died before its
commencement. C. S. was appointed to fill the vacancy in the unex-
pired first term of S. On the first Monday in January, 1917—the
beginning of S.'s second term, had he lived—the board, whose person-
nel had changed, appointed D. to fill such latter term. C. S. refused
to surrender the office, claiming that under section 5, Article XVI, of
the Constitution, she was entitled to hold until the next succeeding gen-
eral election in 1918. *Held*, on *quo warranto*, that the action of the
board of county commissioners was proper, in each instance, and that
D. was, and C. S. was not, entitled to the office.

Same—Title to Office—Parties.
   4.   Title to office cannot be tried in proceedings to which the incum-
bent is not a party.

Same—Official Acts—Collateral Attack.
   5.   The acts of an officer done *colore officii* are proof against collateral
attack.

Original proceedings in *quo warranto* by the State on the
relation of Edward W. Dunne against Carrie G. Smith, to de-
termine title to the office of county assessor of Yellowstone
County. Judgment for relator.

*Messrs. Johnston & Coleman,* for Relator, submitted a brief; *Mr. W. M. Johnston* argued the cause orally.

*Mr. O. F. Goddard* and *Mr. E. E. Collins,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE SANNER delivered the opinion of the court.

*Quo warranto* by Edward W. Dunne, claiming to be the duly appointed and qualified county assessor of Yellowstone county, against Carrie G. Smith, also asserting a similar claim. The agreed facts are these: At the general election held November 7, 1916, A. P. Smith, then, by previous election, the lawful incumbent of the office of county assessor of Yellowstone county, was elected to succeed himself. He qualified by filing the requisite oath and bond and on December 3, 1916, died. Four days later the board of county commissioners of said county, then composed of Messrs. Sorenson, Todd and Rademaker, appointed Carrie G. Smith to fill the vacancy "for the term ending on the first Monday in January, 1917." Mrs. Smith qualified by filing the requisite oath and bond, her bond reciting that it was executed to assure the faithful performance of her official duties during the term "beginning December 7, 1916, and expiring on the first day of January, 1917"; she entered upon the discharge and ever since has discharged the duties of such office. On the first Monday of January, 1917, which was the first day of that month, the personnel of the board was changed by the succession of Mr. Phelan in place of Mr. Sorenson, and on the following day, the new board being in session, these proceedings were had: "It was moved by Phelan that Edward W. Dunne be appointed county assessor to fill the vacancy beginning the first Monday in January, 1917, and ending the first Monday in January, 1919; Commissioner Todd stated that he did not believe a vacancy now existed in said office of county assessor; Chairman Rademaker then seconded the motion of Commissioner Phelan, and instructed the clerk to poll the board, with the following result: Phelan, aye, Rademaker, aye, Todd, nay."

Thereupon the county clerk gave written notice to Dunne of his appointment to such office for such term. On the same day, January 2, Mrs. Smith filed another instrument as and for her official bond as county assessor "for the term beginning on the first day of January, 1917, and expiring on the sixth day of January, 1919," and on the next day, January 3, she filed her constitutional oath. Mr. Dunne likewise qualified on January 3 by filing his oath and bond, and thereupon made demand for possession of the office; but Mrs. Smith refused, and still refuses, to vacate or surrender the same. Certain facts are also agreed which raise a contention touching the right of F. X. N. Rademaker, one of the two acting commissioners who voted for the appointment of Dunne, to sit as a member of the board, which contention will be noticed later in this opinion. The ultimate question is: To which of these appointees does the office belong? This we shall consider: First, as though no dispute existed concerning Rademaker; and, second, as affected by such dispute.

1. The claim of Mrs. Smith is based upon an appointment [1–3] which by its terms is expressly limited and which according to its terms expired on the first Monday in January, 1917. That fact alone would end this branch of the controversy but for her contention that the limitation is ineffective because, under Article XVI, section 5, of the Constitution, and section 2966 of the Revised Codes, the appointee to fill a vacancy holds as a matter of law until the next succeeding general election. This may be admitted as a possible result of the bare language of these provisions superficially considered; that it cannot be a correct application of them seems clear if we bring to our aid certain very common possibilities. Let this be supposed, for instance: Someone other than the incumbent of a county office is elected to succeed him; the successor so elected files his oath and bond; the incumbent dies after such election, but before the elected and qualified successor is entitled to the possession of the office, and an appointment is made to fill the vacancy thus caused. For how long, regardless of its language, is such ap-

pointment good? Certainly not until the next general election, nor beyond the unexpired portion of the incumbent's term, because by virtue of the same constitutional provision the elected and qualified successor is entitled to the office upon the commencement of the term for which he was elected. For the county officers therein mentioned who have been elected to their positions, the constitutional provision plainly contemplates a fixed term of two years, with a contingent occupancy until their successors are elected and qualified. Any such officer holds beyond his fixed term as against a mere appointee (*State ex rel. Chenoweth* v. *Acton,* 31 Mont. 37, 77 Pac. 299); but his contingent right to hold over is cut off the moment a duly elected successor has qualified. In the nature of things it can make no difference whether the elected and qualified successor is the same or a different person—the fact of such election and qualification puts an end to the right of the incumbent to hold over after the expiration of his current term. (*People ex rel. Sweet* v. *Ward,* 107 Cal. 236, 40 Pac. 538.) Suppose again, therefore, that someone other than the incumbent of a county office is elected for the ensuing term, and that he qualifies but dies before the commencement of his term; the incumbent could not, save as *locum tenens* to prevent an interregnum, hold beyond the current term because his successor has been elected and qualified. If in this situation the incumbent should resign before the end of his fixed term, in virtue of what provision or principle could an appointee in his stead possess a greater or longer tenure? By the aid of these and other like examples we are enabled to see that not in all cases can the appointee hold until the next general election, and that a literal construction of the last clause of section 5, Article XVI, of the Constitution cannot be the proper one.

The solution of the matter lies, we think, in the correlation of the last with the other clauses of the section, in holding the vacancies referred to in that clause to be those occurring after the fixed term has commenced, but before a general election, and in realizing its meaning to be that no appointment shall hold

good beyond the next succeeding general election, whether the interval between that event and the end of the fixed term be great or small. (*State ex rel. Rowe* v. *Kehoe*, 49 Mont. 582, 144 Pac. 162.)

The subject has been illuminated by several California decisions, among which *People ex rel. Sweet* v. *Ward*, cited above, is particularly interesting. The facts in that case were: That at the general election in November, 1894, William Darby was elected district attorney of San Diego county to succeed M. L. Ward, then the incumbent by previous election. Darby qualified, and on December 15, 1894, died. By the law of California the elective terms of county officers began at noon on the first Monday after the first day of January in each odd-numbered year, and this, in the year 1895, happened to be the seventh day of the month. On January 2, 1895, the board of supervisors, as then constituted, appointed Ward to fill the vacancy caused by Darby's death, and on the same day Ward qualified under the appointment. At 3 o'clock P. M., on January 7, 1895, the board, its personnel having been changed, declared a vacancy to exist in the office of district attorney, and appointed A. H. Sweet to fill it during the term for which Darby had been elected. Sweet qualified, demanded possession and, being refused, brought proceedings to try the title to the office. Ward contended that no vacancy in the office resulted from Darby's death prior to the time Darby was entitled to take possession, because he (Ward) was then entitled to the office, with the right to hold until divested by a duly elected or appointed and qualified successor, or, if there was a vacancy, he was entitled to the office because of his appointment to serve out Darby's term. Disposing of these contentions the court said: "It is not to be questioned but that if Darby had lived, and at noon of the seventh day of January, 1895, had demanded the office of Ward, he would have been entitled to enter it, and Ward's term would thus and then have ceased and determined. But was a demand by Darby necessary to determine Ward's tenure? The answer is found in the language of the statute. Ward,

by section 60 of the Act quoted, and by section 879 of the Political Code, was entitled to hold absolutely until noon of January seventh, and contingently after that date, if no successor had been elected or appointed and qualified. * * * So here, the legislature having in effect provided that Ward's term upon the election and qualification of Darby came to an end at noon of January 7, 1895, a vacancy in law resulted when Darby's death prevented his succession. * * * The election and qualification of Darby as Ward's successor (and not a demand by him for the office) *ipso facto* cut off Ward's contingent term, and limited him to the absolute period; that is, until noon of January 7. * * * The vacancy which occurred having arisen at noon of January 7, it remains to be considered whether the action of the board of supervisors upon January 2 was legal or illegal. * * * The board then undertook to fill, not an existing vacancy, but one soon to exist, * * * one which in the nature of things was certain to arise, though at a future date, and at a time when, in legal contemplation and in fact, a different board would be in control of the county's affairs. Briefly, the act of the board was to make an appointment to take effect, and to fill a vacancy to arise, in the term of its successor. * * * Upon the election and qualification of Darby his right to the office for the term commencing at noon of January 7 vested immediately, and Ward's contingent right to an additional term was cut off. Upon the divestiture of that right by death, it existed in no one, and there was no revivor of Ward's contingent right to an extended term. The power of the board of supervisors in dealing with such matters is drawn from subdivision 21, section 25, of the County Government Act of 1891, and it is limited to the filling of vacancies. That power could properly be exercised only upon an existing vacancy. The board could by its action neither create a vacancy, nor by anticipation fill one, which was to arise *in futuro* during the term of its successor. * * * We conclude, therefore: First, that a vacancy arose in the office of district attorney by reason of the election, qualification and death of Darby; second, that this vacancy

existed at and after noon of the seventh day of January, 1895, and not before; third, that the attempt of the first board of supervisors to fill the vacancy upon January 2 was in excess of its power and void; fourth, that the vacancy was properly filled by the existing board at 3 o'clock P. M. of January 7, 1895.''

Again, in *People ex rel. Mattison* v. *Nye,* 9 Cal. App. 148, 98 Pac. 241, the subject was considered from a slightly different angle, the facts being that at the general election of 1906, one Colgan, state controller by previous election, was re-elected. A few days later he died, and the governor (then J. C. Pardee) appointed Nye ''to fill the unexpired term.'' Nye qualified, took possession, and carried on the work of the office. On Monday the seventh day of January, 1907, Governor Pardee issued a second commission to Nye ''for the term prescribed by law, vice self and E. P. Colgan, deceased,'' and Nye *immediately* qualified thereunder. On April 29, J. N. Gillett, Pardee's successor as governor, appointed one Mattison to the office, who qualified, demanded possession, and, being refused, brought proceedings. Nye advanced the contention that, under section 8, Article V, of the California Constitution, which provides that vacancies in certain state offices, including that of controller, shall be filled by commission from the governor, which commission ''shall expire   *   *   *   at the next election by the people,'' he was entitled to hold under the first appointment until the general election of 1908, or else there was a vacancy on the seventh day of January, 1907, and he was entitled to hold under the second commission. The court, overruling the first and sustaining the second of these alternatives, said: ''Two distinct terms are involved in this controversy. Mr. Colgan was serving one term as controller when in November, 1906, he was elected for another term. If the first term did not come to an end, there could be no beginning of the second term. It is impossible to conceive of the beginning of one without the ending of the other. But the term for which he was elected in November, 1906, according to the provisions of the Constitution, began either January 7 or 8, 1907.   *   *   *   Therefore   *   *   *

Mr. Nye's right to hold the office under the first commission expired either January 6 or January 7, 1907. It is true that in the interests of the public service, to prevent an interregnum, it was his privilege and his duty to discharge the functions of the office; * * * but he did not thereby acquire any right to a new, fixed and definite term. He became a temporary incumbent, *locum tenens,* by virtue of public necessity, it has been said, until the place could be regularly filled. * * * From the foregoing considerations it clearly follows that at the beginning of the term for which Mr. Colgan was elected in November, 1906, there was in legal contemplation a vacancy in the office of controller." And it was held that since this term began before the second appointment of Mr. Nye, "the latter is now entitled to the office."

So here, we may repeat: Two terms are involved, the term for which Mr. Smith was the incumbent of the office of county assessor of Yellowstone county when he died, and the term for which he was elected in November, 1916. Only the first of these became vacant when he died, and it alone could be filled by the board which appointed Mrs. Smith; the second did not become and could not be vacant until the first Monday in January, 1917, at which time a new board came into office. On that board was cast the duty to fill the vacancy by appointment, and this it did by the selection of Mr. Dunne. He therefore is entitled to hold until the next general election, unless it must be held that his appointment, depending as it did on the vote of Mr. Rademaker, was invalid on that account.

2. It is a fact established by the agreed statement that at the time Dunne was appointed, Rademaker was acting as a member of the board of county commissioners of Yellowstone county. He had theretofore and for some months been acting without challenge or question pursuant to an appointment; but he was then claiming the office by virtue of election in November, 1916, to fill the unexpired term of W. C. Renwick, who had been elected in 1914, and who had resigned. The contention is that Rademaker is a mere intruder, whose acts are void, because he

failed to qualify in time under the appointment, and his selection by the people was invalid because no notice of any special election to fill the unexpired term of Mr. Renwick was ever given. Upon the face of the record the claim of Mr. Rademaker might possibly be upheld, under the decision of this court in *State ex rel. Patterson* v. *Lentz,* 50 Mont. 322, 146 Pac. 932; but be [4, 5]   that as it may, his title to the office of commissioner cannot be tried in a proceeding to which he is not a party.   (*State ex rel. Buckner* v. *Mayor of Butte,* 41 Mont. 377, 109 Pac. 710.) He was at least a *de facto* commissioner, and his acts *colore officii* are proof against collateral attack.

It is therefore adjudged that the relator, Edward W. Dunne, is, and since January 3, 1917, has been, entitled to the office of county assessor of Yellowstone county, Montana, and he is entitled to recover his costs herein incurred; that the respondent, Carrie G. Smith, is not entitled to said office; that she ought to be, and is, ousted therefrom and charged with the costs of this proceeding.

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.