STATE ex Rel. NAGLE, Attorney General, Relator, *v.* STAFFORD, Respondent.

(No. 7,412.)

(Submitted February 18, 1935. Decided February 21, 1935.)

[43 Pac. (2d) 636.]

*Mr. Raymond T. Nagle,* Attorney General, appearing *pro se,* argued the cause orally.

*Messrs. Toomey & McFarland* and *Mr. John W. Chapman,* for Respondent, submitted a brief; *Mr. E. G. Toomey* argued the cause orally.

*Mr. S. C. Ford, Amicus Curiae,* submitted a brief and argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Original proceeding in *quo warranto,* by the state on the relation of Raymond T. Nagle, as Attorney General, against A. H. Stafford.

On April 5, 1929, Governor J. E. Erickson duly appointed A. H. Stafford to the position of Commissioner of Agriculture, Labor and Industry for the full term of four years, which appointment was thereafter duly confirmed by the Senate. Stafford duly qualified by the execution and filing in the office of the Secretary of State of his oath of office and bond, with the National Surety Company as surety, duly approved by the Governor. On March 13, 1933, Governor Erickson executed and filed a re-appointment of Stafford to the office for a like term to commence April 1, 1933, and thereafter, on the same day, resigned as Governor, whereupon Lieutenant-Governor Frank H. Cooney assumed, and ever since has discharged, the duties of Governor.

On March 14, 1933, Stafford filed a new oath of office. On May 1, 1933, the National Surety Company went into liquidation and was succeeded by the National Surety Corporation, which corporation assumed the obligations of the old company, and on May 15 executed and delivered to Stafford an instrument in writing purporting to continue his original bond in

force during the term for which he had been re-appointed, but this instrument was never filed and recorded in the office of the Secretary of State. In June, 1933, the state paid the annual premium on Stafford's bond as theretofore, and did so again in June, 1934.

From November 27, 1933, to January 19, 1934, the Legislative Assembly was in extraordinary session pursuant to the call of the Governor, and on January 9, the Senate confirmed Stafford's appointment, and the secretary of that body caused a communication to that effect to be written, advising the Governor of the Senate's action. This communication appeared in the files of the executive office as received January 10, but the time of its receipt is unimportant. On January 10 the Senate moved to reconsider the confirmation and thereafter indefinitely postponed action on the appointment. The Executive sent in two other names, but these failed of confirmation, and, after the adjournment of the legislature Governor Cooney appointed A. P. Bruce to the position. Bruce qualified and demanded possession of the office, which demand met with a refusal on the part of Stafford. The Attorney General instituted *quo warranto* proceedings in the district court against Stafford and Bruce, which proceeding resulted in a judgment on the pleadings in favor of Stafford, later affirmed in this court. (*State ex rel. Nagle* v. *Stafford*, 97 Mont. 275, 34 Pac. (2d) 372.) The purport of that opinion is that an appointee holds over until his successor is appointed, qualified and confirmed, his bond continues in force without the filing of a new bond, and so long as he continues to occupy the office and discharge the duties thereof, there can be no "vacancy" in the office, within the meaning of the Constitution and statute authorizing the Governor to appoint to fill a vacancy occurring during a recess of the Senate. Stafford's right to the office was upheld on the ground that he was holding over under his original appointment, and no successor had been appointed, qualified and confirmed to succeed him. His claim of right under the new appointment was not considered, as such consideration was not necessary to a decision.

The Legislative Assembly being again in session, on January 10, 1935, Governor Cooney executed and transmitted to the Senate an instrument in writing again appointing A. P. Bruce Commissioner of Agriculture, Labor and Industry, and on January 18 this appointment was confirmed; whereupon Bruce executed and filed with the Secretary of State his oath and a bond approved by the Governor, and demanded possession of the office from Stafford, which demand was refused; this action followed.

To the Attorney General's complaint and an order to show cause issued, Stafford made return and answer; he now claims title to the office by virtue of his appointment by Governor Erickson on March 13, 1933, and 'his confirmation by the Senate on January 9, 1934. Conceding that Stafford was duly and regularly appointed for a second term commencing April 1, 1933, the question decisive of his right to now hold the office in spite of the appointment of his successor is: Was it necessary that he should qualify for the term, and did he do so?

After providing for the appointment of the Commissioner of Agriculture, Labor and Industry, the Codes provide that "before entering upon the duties of his office, the commissioner * * * shall take and subscribe the constitutional oath of office, and shall give a surety company bond in the sum of five thousand dollars, * * * the cost of said bond to be paid by the state. * * * " (Sec. 3557, Rev. Codes 1921.) Such a bond must be approved by the Governor and the approval indorsed thereon before it can be filed; after securing approval the bond must be filed in the office of the Secretary of State and there recorded in a book kept for that purpose. (Secs. 469, 472, 473, 474, Id.) Compliance with these provisions constitutes qualification for the office. Stafford complied with the provision respecting his oath of office and secured from the successor to his surety on his original bond a continuation or extension certificate for the new term. Whether or not, in view of the circumstances shown, the extension certificate was sufficient as a new bond and carried

with it the approval of the Governor indorsed on the original bond, we need not here determine.

It is clear from the pleadings and from the testimony taken before a referee on February 12, 1935, that this continuation certificate was never filed for record or recorded in the office of the Secretary of State; indeed, Stafford does not contend that it was ever tendered for filing. The most that is contended on Stafford's behalf is that the certificate rendered the original bond operative until April 1, 1937, and that the state paid premiums rendering it effective until May, 1935, which will be after the adjournment of the legislature, and that, by approving Stafford's new bond as treasurer of the Industrial Accident Board, which position he occupies by virtue of being Commissioner of Agriculture, Labor and Industry, the Governor and Attorney General in some way ratified his holding the latter office for a new term. As to this last contention we are not advised as to why a new bond was secured and filed, but it has nothing to do with the bond as commissioner; nor does the fact that the State Board of Examiners continued to pay the annual premium on Stafford's bond after the expiration of his first term aid him here.

Under the law, Stafford was authorized to hold over until his successor was appointed, qualified and confirmed, and, had no timely action of the Governor intervened, he could have continued to hold over for the full period of the continuation certificate. His bond would have been binding on the surety, and the state would have been liable for the premiums during that whole period, and, if necessary, beyond it, with or without the consent of the surety company. (Sec. 480, Rev. Codes 1921.)

Counsel for Stafford contend that, because the above section provides that every official bond is an obligation upon the principal and his sureties so long as the officer continues "to discharge any of the duties of or hold the office," the bond originally given and continued was sufficient without any further filing. Such intention cannot possibly be read into the statute; it refers only to a holding of the office under the

original appointment or election of the officer, as will presently be made clear.

Any office becomes vacant on the happening of either of the ▮▮▮▮ events enumerated in section 511 of the Revised Codes of 1921, the ninth of which is when the person elected or appointed to the office refuses or neglects to file his official oath or bond within the time prescribed. Such a vacancy may be filled by the official authorized to do so, as soon as it occurs, as the appointing power is plenary (*State ex rel. Wallace* v. *Callow*, 78 Mont. 308, 254 Pac. 187), but where, as here, confirmation is necessary, the appointment of a successor is not effective to oust the incumbent until the new appointee is confirmed. (*State ex rel. Nagle* v. *Stafford et al.*, above.) The mere fact that a new bond is secured, if we consider the continuance certificate a new bond, does not help Stafford's situation, as the bond can only become operative on delivery; its filing is mandatory. (*State ex rel. Wallace* v. *Callow*, above.)

Counsel for Stafford insist that the rules announced in the *Callow Case* are not applicable here, as Callow was newly elected to office, for that the rule extending the liability of the sureties for the period during which an official lawfully holds over "is applicable to a case where the officer is reelected (or appointed) but fails technically to qualify for his second term." They cite a number of cases to this effect, but the decisions go no further than to hold that, in such circumstances, the official is a hold-over for his second term and consequently his original bond is in effect during the period he holds over, even though it be for the full second term. (*Steusoff* v. *Liberty County*, (Tex. Civ. App.), 34 S. W. (2d) 643.)

As was said in *Lynn* v. *Cumberland*, 77 Md. 449, 26 Atl. 1001, 1002: "Lynn's office was one year, and until his successor was duly elected and qualified. * * * Now, he was re-elected * * * but failed to qualify, for he neither took the oath of office nor gave a new bond. He therefore continued in the office * * * under his first election, and * * * the bond [originally given] covers his failure" to

pay over moneys received during his second term. This was in spite of his re-election, because he held over and no successor had been appointed.

Our statutes make no distinction between an official elected or appointed for the first time to office and those re-elected or re-appointed; all must qualify in the manner prescribed, or a vacancy occurs in the office, and this is the general rule. (22 R. C. L. 452.) If an officer "is re-elected he is directed to qualify anew, the same as if another were elected. * * * By not doing this the office becomes vacant." (*Wapello County* v. *Bigham,* 10 Iowa, 39, 74 Am. Dec. 370.)

A situation similar to that here considered was disposed of in *Baker City* v. *Murphy,* 30 Or. 405, 42 Pac. 133, 35 L. R. A. 88, wherein it appears that the defendant Murphy was re-elected city treasurer; he failed to requalify but continued to hold the office. He contended that he was holding under his second term and alleged that "said plaintiff, Baker City, its mayor and common council, acknowledged said Murphy and held him out to the world * * * as his own successor." The court held, in effect, that Murphy could only become his own successor by requalifying; that he had held under one continuous term—his original term—which, under the statutory authority to hold until his successor was elected and qualified, was prolonged until such time as his successor was appointed and qualified to fill the vacancy he created by failure to qualify, and, as the statute became a part of the contract, the original sureties on his bond were liable for his defaults for the full extended term. (See, also, *State* v. *Lansing,* 46 Neb. 514, 64 N. W. 1104, 35 L. R. A. 124; *Bullock* v. *State,* 65 N. J. L. 557, 47 Atl. 62, 86 Am. St. Rep. 668.)

While the bond which was approved and recorded protects the state while Stafford holds over under his original appointment, under the rule of strict construction of bonds in favor of the surety, that bond is not the basis for liability for his acts as his successor. (*Thomssen* v. *Hall County,* 63 Neb. 777, 89 N. W. 389, 57 L. R. A. 303; *Richardson School Fund* v. *Dean,* 130 Mass. 242; *Savings Bank* v. *Hunt,* 72 Mo. 597, 37 Am. Rep.

449.)   Nor does it aid Stafford that his original bond was not limited as to time.   As to such a bond "it is well settled that * * * such a bond is only for the term of office for which the officer has been appointed or elected at the time it is given."   (9 C. J. 44.)

Having failed to qualify for his second term, as required by law, and his successor having been duly appointed, confirmed and qualified, Stafford no longer legally holds the office in question.

It is therefore adjudged that A. H. Stafford be, and he is hereby, ousted from the office of Commissioner of Agriculture, Labor and Industry.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES STEWART, ANDERSON and MORRIS, concur.