LABORDE, PLAINTIFF, *v.* McGRATH, COUNTY CLERK AND RECORDER, DEFENDANT.

(No. 8537.)

(Submitted June 19, 1944. Decided June 24, 1944.)

[149 Pac. (2d) 913.]

284

Mr. *Harry K. Jones*, for Plaintiff, submitted a brief and argued the cause orally.

Mr. *Philip O'Donnell* and Mr. *Frank J. Roe*, County Attorney, for Defendant, submitted an original and a supplemental brief; Mr. *O'Donnell* argued the cause orally.

Mr. *R. V. Bottomly*, Attorney General, Mr. *Fred Lay*, First Assistant Attorney General, and Mr. *Robert L. Word, Jr.*, Special Assistant Attorney General, appearing as *amici curiae*, submitted a brief; Mr. *Lay* and Mr. *Word* argued the cause orally.

MR. JUSTICE ADAIR delivered the opinion of the court.

Original proceeding. The plaintiff, Frank G. LaBorde, a registered elector of Silver Bow County brings this action to restrain the clerk and recorder of said county from proceeding with a primary nominating election to select, by direct primary vote, candidates for the office of county treasurer to be voted upon at the time of holding the next general election.

At the general election held November 3, 1942, William Mc-Phail was elected to the office of county treasurer of Silver Bow County for a full term of four years to commence on March 1, 1943. He qualified for the office but before the commencement of his term and on January 22, 1943, he died. Thereafter, by order of the board of county commissioners, Phemia McPhail was appointed to fill the vacancy in the office. She promptly qualified and on the first Monday in March, 1943, she assumed the office of county treasurer and has since continuously discharged the duties thereof.

On June 16, 1944, the board of county commissioners issued a proclamation giving notice that on Tuesday, November 7, 1944, a special election would be held to elect a county treasurer for the unexpired term ending the first Monday in March, 1947. The respondent county clerk and recorder has given notice that a primary nominating election will be held on July 18, 1944, at which, among other things, the Democratic and Republican

parties will choose, among others, their candidates for the office of county treasurer for the unexpired term, from the general election to be held November 7, 1944, to the first Monday in March, 1947. Nominating petitions have been filed for the office of county treasurer by three candidates. Phemia McPhail and Ed (Eddie) Harrington have filed for the Democratic nomination and Adele Wilkinson for the Republican nomination. The respondent county clerk and recorder, if not restrained, will cause the names of such persons to be printed upon the ballots to be used at the regular primary election to be held on July 18, 1944, as candidates for the nomination of such political parties for such office and to thereafter cause the names of the candidates so nominated by each party to be printed on the ballots as the candidates of said parties for said office at the election to be held on November 7, 1944.

The question for decision is whether the law requires or permits the political parties, by direct vote, to nominate candidates for the office of county treasurer at the coming regular primary election.

"By the apparent weight of authority, it is held that where one elected for an office dies after he has qualified and before the commencement of his term, a vacancy is created in the new term which may be filled as by law provided." (42 Am. Jur., sec. 135, p. 979.)

The Constitution of Montana (sec. 5, Art. XVI) provides that vacancies in county offices, which of course include the office of county treasurer, "shall be filled by appointment by the board of county commissioners." This constitutional provision was complied with when the board of county commissioners appointed Phemia McPhail to the office. The vacancy became, and was, filled when she accepted the appointment and qualified.

The Constitution (sec. 5, Art. XVI) also provides that "the appointee shall hold his office *until the next general election.*" The appointee Phemia McPhail may therefore hold her office as county treasurer of Silver Bow County "until the next gen-

eral election." Such general election will occur on November 7, 1944.

The office of county treasurer is one that is regularly required to be filled by election and it is only when a vacancy occurs that an appointment is authorized. Formerly the Constitution provided that county treasurers should hold office "for the term of two (2) years, and until their successors are elected and qualified." (Sec. 5 of Art. XVI.) By an amendment to the Constitution (Chapter 93, p. 727 Laws of 1939) the term of office has been extended to four years.

The people have reserved in themselves the power to elect county treasurers except when a vacancy shall occur in which event the people have delegated to the board of county commissioners the power to fill such vacancy in the office by appointment good only "until the next general election" at which time the Constitution contemplates the people may elect whom they choose to occupy the office.

A general election is held in this state every two years. The law requires that it be held on the first Tuesday after the first Monday of November in each even numbered year. (Sec. 531, Rev. Codes.) Formerly, when the county treasurers were elected for the term of two years, the electors had an opportunity to elect a county treasurer at each and every general election. Since the constitutional amendment extending the term to four years (Chapter 93, p. 727, Laws of 1939) the electors ordinarily and regularly elect a county treasurer at each alternate general election. There would be no object in attempting to elect a person to the office of county treasurer at any other time or place than at a general election for when a vacancy occurs it is immediately filled by appointment and the appointee then holds the office until the general election next following his appointment and the result of no special election could oust the appointee prior to the general election held next after his appointment and qualification.

In the Constitution of this state the people reserved to themselves the power to propose laws and to enact or reject the

same at the polls, expressly stating therein: "The first power reserved by the people is the initiative." (Sec. 1, Art. V, Constitution.) Pursuant to this expressly reserved power the people in 1912 by an initiative measure enacted the Primary Election Law. (Sections 631-670, Rev. Codes.)

Section 632, Revised Codes, provides that in July preceding any general election a primary nominating election shall be held in the several election precincts comprised within the territory for which public officers are to be elected. Such primary nominating election is for the purpose of choosing candidates by the political parties for certain designated offices including all elective county officers who are to be chosen, at the ensuing election, wholly by electors within this state or any subdivision of this state. The time fixed by statute for holding such primary nominating election is "the third Tuesday of July preceding any general election" (sec. 632, Rev. Codes) which is but another way of saying that such primary election shall be held biennially on the third Tuesday of July of each even numbered year.

Section 639 in part provides: "Every political party * * * shall nominate its candidates for public office in such county * * * under the provisions of this law, (Primary Election Law) *and not in any other manner; and it shall not be allowed to nominate any candidate in the manner provided by section 612 of this code.* * * * The names of candidates for public office nominated under the provisions of this law shall be printed on the official ballots for the ensuing election as *the only candidates* of the respective political parties for such public office in like manner as the names of the candidates nominated by other methods are required to be printed on such official ballots." (Emphasis ours.) Thus whenever the provisions of the Primary Nominating Election Law apply then the convention or primary meeting methods of making nominations provided for in section 612 are expressly ruled out and prohibited by the above quoted provision of section 639.

The Primary Election Law (sec. 632, Rev. Codes) reads: "On

the third Tuesday of July preceding any general election (not including special elections to fill vacancies, municipal elections in towns and cities, irrigation district and school elections) at which public officers in this state and in any district or county are to be elected, a primary nominating election shall be held in accordance with this law in the several election precincts comprised within the territory for which such officers are to be elected at the ensuing election, which shall be known as the primary nominating election, for the purpose of choosing candidates by the political parties, subject to the provisions of this law, for senator in Congress, and all other elective state, district and county officers, and delegates to any constitutional convention or conventions that may hereafter be called, who are to be chosen, at the ensuing election wholly by electors within this state, or any subdivision of this state, and also for choosing and electing county central committeemen by the several parties subject to the provisions of this law.''

At the very beginning of the above section, the authors of the Primary Election Law sought to definitely fix a time at which the primary nominating election should be held. This time originally was fixed as ''On the seventieth (70) day preceding any general election (not including special elections to fill vacancies, municipal elections in towns and cities, irrigation district and school elections) at which public officers in this state and in any district or county are to be elected.'' (Laws 1913, p. 570, sec. 2.) The above system of reckoning fixed the time for the holding of the primary nominating election in the month of August. Subsequently, the legislature amended the above quoted provision of the original initiative measure so as to provide for the holding of the primary nominating election at an earlier date. The month selected was July and the day of that month was the third Tuesday but the legislature did not intend that a primary election should be held in July each year for the language of the law plainly indicates that it was only the month of July ''preceding any general election'' as is provided for in section 531, Revised Codes, that a primary nominating

election should be held. When the authors placed in parenthesis after the words "On the third Tuesday of July preceding any general election" the clause "(not including special elections to fill vacancies, municipal elections in towns and cities, irrigation district and school elections)" they simply meant that the date fixed by law for the holding of the primary nominating election should be reckoned back from the biennial general election at which public officers in the state, district and county are to be elected and not including in any such reckoning any such elections as special elections to fill vacancies or municipal elections in towns and cities or irrigation district elections or school elections. It was from date of the holding of the general election (sec. 531, Rev. Codes) that the date for the holding of the primary election was to be reckoned and not from the date of the holding of any of the elections enumerated in that part of section 632 which is enclosed in parenthesis for such elections are not included nor considered and have no bearing on determining when a primary nominating election shall be held.

Reduced to common everyday language the law provides for the holding of a primary election in July of each even numbered year and the year 1944 being such the law contemplates the holding of the next general election on November 7, 1944, and the holding of the next primary nominating election on the third Tuesday in the month of July preceding such general election; to-wit, on July 18, 1944.

It is quite apparent from the language and purpose of the ██ Act that the people of this state, in initiating the measure, sought to curb and correct the alleged abuses obtaining under the convention and caucus methods of nominating candidates by making the provisions of the Primary Nominating Election Law generally applicable in all situations wherein they could be made reasonably operative.

In initiating the law the people of this state knew there would ██ be language and provisions therein that would prove to be of doubtful or uncertain meaning and that there would occur instances wherein the directions and details might not be as

explicit as desired, hence they expressly called attention to these matters so that those who are to administer or interpret the law may keep in mind and not lose sight of the purposes sought to be accomplished "to the end that the protection of the spirit and intention of said laws shall be extended so far as possible to all primary elections, and especially to all primary nominating elections provided for by this law." (Sec. 631, Rev. Codes.)

As to the intent and purposes generally of primary election laws, American Jurisprudence has this to say: "The word 'primary' necessarily implies, as qualifying the word 'election,' an election or choosing antecedent to the final choice or 'election.' The primary is the initial step in the system looking to the nomination of candidates whose names are to find a place on the official ballot. Its purpose is to give vitality to the constitutional guaranty of a free and untrammeled ballot, for freedom of choice of candidates is no less important than freedom in expression of choice as between candidates on the final election. The importance of nominations and the necessity of regulating them are universally recognized, and to such necessity may be attributed the existence of the modern primary system, which is neither more nor less than an attempt to free nominations from the domination of professional politicians and persons representing special interests. The desire to correct abuses in the convention and caucus systems of nominating and to give to electors final control in the selection of their own candidates has resulted in the institution of official primary elections which are conducted by the state with the same care and under the same supervision as the elections themselves and at which each member of the party is given opportunity to vote directly for the candidate of his choice."

The cited cases of *State ex rel. Smith* v. *Duncan*, 55 Mont. 376, 177 Pac. 248, and *State ex rel. Reibold* v. *Duncan*, 55 Mont. 380, 177 Pac. 250, have to do with the method of nominating a candidate for the office of state senator to be filled at a special election duly called for such purpose. The state senator

for Lewis and Clark County elected at the general election in 1916 for a four-year term having resigned, one Frank D. Miracle at the following general election held November 5, 1918, was elected to fill the unexpired term and 17 days later he died. Five days later a special election was called for December 28, 1918, to elect a senator to fill the vacancy. At that time the only method of becoming a member of the legislative assembly was by election and the only method of filling any vacancies in such offices was by special election called for such purposes pursuant to section 45 of Article V of the Constitution which then read "When vacancies occur in either house the governor * * * shall issue writs of election to fill the same." No power then reposed in anyone to fill a vacancy in either house by appointment (*State ex rel. Cutts* v. *Hart*, 56 Mont. 571, 185 Pac. 769, 7 A. L. R. 1678) and the one and only means provided by the Constitution for filling same was by special election.

Here we have an entirely different situation for the Constitution provides that vacancies in the office here involved shall be filled by appointment and it makes no mention of filling same by any special election. The vacancy in the office occasioned by the death of the first incumbent has been fully and completely filled by the lawful appointment and qualification of the present incumbent. In the above cases involving the office of state senator for Lewis and Clark County, the office of state senator became vacant upon the death of Frank Miracle and it remained without an incumbent until a special election could be held to fill such vacancy. In the instant case the vacancy was promptly filled by appointment as is provided in the Constitution and no special election was required and none has been held. Section 532, Revised Codes, provides that, "Special elections are such as are held to supply vacancies in any office, and are held at such times as may be designated by the proper officer or authority." "The word 'vacancy' as applied to a public office, has no technical meaning, and it is not to be taken in a strict technical sense in every case. It may be said that an office is vacant when it is empty and without an

incumbent who has a right to exercise its functions and take its fees or emoluments, even though the vacancy is not a corporal one. Accordingly, an office is not vacant so long as it is supplied in the manner provided by the Constitution or law with an incumbent who is legally qualified to exercise the powers and perform the duties which pertain to it; and, conversely, it is vacant in the eye of the law whenever it is unoccupied by a legally qualified incumbent who has a lawful right to continue therein until the happening of some future event." (42 Am. Jur., sec. 131, p. 976.) "An office without an incumbent is vacant." (*State ex rel. Patterson* v. *Lentz,* 50 Mont. 322, 336, 146 Pac. 932, 935. See also, *State ex rel. Chenoweth* v. *Acton,* 31 Mont. 37, 40, 77 Pac. 299, 300.)

Section 5 of Article XVI of the Constitution, which specifically controls the case here presented, makes no mention whatever of any special election. It does mention "the next general election" however, and it clearly contemplates the election of a county treasurer at such general election but since the vacancy occasioned by the death of William McPhail has already been filled long since by the appointment of the incumbent Phemia McPhail it appears that the candidates for the office who seek the nomination of their respective political parties come squarely within the provisions of the Primary Election Law and that they should be considered as candidates for an elective county office "who are to be chosen, at the ensuing election wholly by electors within this state." (Sec. 632, Rev. Codes.)

The death of the first incumbent and the appointment of the present incumbent came long prior to the time fixed by the law for the holding of the primary election and we see no good reason why the primary election law should not apply. It would seem that section 639, Revised Codes, specifically prohibits the nomination by the political parties of candidates in the manner provided by section 612 where, as here, the methods prescribed by the primary law are available.

Should a vacancy be filled by an appointment made sub-

294

 sequent to the holding of the primary election but prior to the general election or should the appointment be made at such other time as would make it impossible or unreasonable for candidates to file and otherwise comply with the Primary Nominating Election Law, then the prohibition of section 639 would not apply and the nomination of a candidate could then be made pursuant to the provisions of section 612, Revised Codes, or of section 615. Under the facts here we hold the Primary Nominating Election Law applies and that the candidates for the office of county treasurer may be nominated at the regular primary nominating election.

The petition fails to state facts sufficient to entitle the relator to the relief sought. Respondent's demurrer is sustained and the petition dismissed.

ASSOCIATE JUSTICES ANDERSON and ERICKSON concur.

MR. JUSTICE MORRIS, concurring specially:

I concur in the result of the foregoing opinion by MR. JUSTICE ADAIR but not in all that is said therein. If plaintiff's contention as to the meaning of section 632, Revised Codes, wherein it refers to special elections to fill vacancies in county offices were conceded to be correct, it would bring that section in conflict with section 5 of Article XVI of our Constitution.

MR. CHIEF JUSTICE JOHNSON not participating.