STATE OF MONTANA ex rel. ARNOLD H. OLSEN, Attorney General, Relator, v. ROBERT F. SWANBERG, Defendant and Respondent, and HAROLD L. McCHESNEY, Defendant and Appellant.

No. 9566.

Submitted November 4, 1955. Decided June 27, 1956.

299 Pac. (2d) 466.

Mr. Daniel J. Sullivan, Mr. Edmond G. Toomey and Mr. Michael J. Hughes, Helena, for appellant.

Mr. Ralph J. Anderson and Mr. Stanley P. Sorenson, Helena, for respondent.

Mr. Sullivan, Mr. Hughes, Mr. Toomey, Mr. Anderson argued orally.

MR. JUSTICE ANDERSON:

This is an appeal from a judgment wherein the court below, in a quo warranto proceeding, held that Mr. Swanberg was entitled to the office of chairman of the board of the Industrial Accident Board of Montana.

On April 29, 1955, the Governor appointed the appellant McChesney "Chairman of the Industrial Accident Board for a four year term expiring May 1, 1959" to replace Mr. Robert F. Swanberg who had been appointed on the 29th day of December 1952 to fill the unexpired term of Baxter Larson, such term expiring on May 1, 1955. At the time of the appointment of McChesney the legislature was not in session and had not been since its adjournment *sine die* on March 3, 1955. Hence Mr. McChesney's appointment has not been referred to the Senate for confirmation; and that body has not yet given its consent thereto.

The only statute which gives the Governor power or author- to appoint to the Industrial Accident Board is section 92-104 of the Codes as amended by Chapter 161, Laws of 1953. This section is a special statute designed to define the governor's authority to appoint to this board alone. As such it controls any other statute which relates to the general powers of the chief executive to appoint to public office, or to fill vacancies therein. In re Wilson's Estate, 102 Mont. 178, 195, 56 Pac. (2d) 733, 105 A.L.R. 367. It follows that if Mr. McChesney's appointment does not square with section 92-104, as amended, he has no title to the office here in controversy unless that statute conflicts with the Constitution or for any reason is not applicable.

That statute plainly stipulates that the governor's authority to appoint is conditioned upon the consent of the Senate given thereto. No other meaning may be put upon the words found in Chapter 161, viz., "by and with the consent of the sen-

ate.'' It must be presumed that by this amendment the legislature intended to effect some change in the law as it read theretofore and in its application particularly to the appointment of the chairman of the Industrial Accident Board. Nichols v. School District No. 3, 87 Mont. 181, 186, 287 Pac. 624.

Before the enactment of Chapter 161 an appointment by the governor to that board under section 92-104 was effective at once by the governor's act alone and without more. In these circumstances it is clear that the change intended and actually effected by the amendment, which Chapter 161 makes, is to add the condition that an appointment to this board by the governor shall be neither complete nor effective until the consent of the Senate has been given. Otherwise this chapter adds nothing to section 92-104 as it was construed and applied before amendment.

The last three lines of the amendment to R.C.M. 1947, section 92-104, read: ''provided, however, the provisions of this act shall not be applicable to the chairman of the board until the expiration of term of the present chairman of said board.'' The present chairman referred to in the statute was Mr. Swanberg. As applied to this case, this paragraph simply means that confirmation of Swanberg was unnecessary but plainly it requires confirmation of his successor.

Counsel for McChesney contend that there was a vacancy in the office occurring during a recess of the Senate authorizing an appointment under section 7 of Article VII of our Constitution without confirmation of the Senate. Section 7 of Article VII contains this paragraph: ''If during a recess of the senate a vacancy occurs in any such office, the governor shall appoint some fit person to discharge the duties thereof until the next meeting of the senate, when he shall nominate some person to fill such office.'' That paragraph of the Constitution has reference only to such vacancies which leave the office without anyone to discharge the duties and does not apply to a case where the incumbent holds until his successor is elected or appointed and qualified and is discharging the duties of his office. This

court has so held in State ex rel. Nagle v. Stafford, 97 Mont. 275, 291, 34 Pac. (2d) 372. In that case there was before this court for construction what is now R.C.M. 1947, section 3-102, which provides that the commissioner of agriculture shall be ''appointed by the governor, by and with the consent of the senate.'' The term of the incumbent Stafford ended on April 1, 1933. But because the statute also stipulated that not only should he ''hold office for a term of four years,'' but also ''until his successor is appointed and qualified,'' Stafford held over after April 1, 1933, claiming his office as against his successor Bruce, to whose appointment by the governor the Senate had not given its consent. The Stafford case is identical with the instant controversy between Mr. Swanberg and Mr. McChesney. The following language found in the Stafford opinion becomes controlling here, viz., '' 'where a person is appointed to an office under a constitutional or statutory provision that the appointment may be made with the approval of some officer or body, such appointment must be approved before the person is legally entitled to the office, except in the case of such a vacancy in the office that the duties of the office are no longer being discharged.' Note 17 Ann. Cas. 1011 * * *''. State ex rel. Nagle v. Stafford, supra, 97 Mont. at page 290, 34 Pac. (2d) at page 379. The authorities cited there, including State ex rel. Chenoweth v. Acton, 31 Mont. 37, 77 Pac. 299, support the rule to which the lower court adhered. We see no reason for departing from this rule.

In State ex rel, Sandquist v. Rogers, 93 Mont. 355, 18 Pac. (2d) 617, 618, the appointments by the mayor of the City of Havre to the office of city engineer failed of confirmation by the council. Under R.C.M. 1947, section 11-802, subd. 1, then in effect as R.C.M. 1921, section 5030, subd. 1, the mayor was empowered to nominate, and, ''with the consent of the council, to appoint all non-elective officers.'' This court held in the Rogers case: ''The nominees of a mayor who fail to be confirmed by a city council do not become effective as officers and cannot assume that status until concurred in by a majority of the city or town

council.'' The statute there construed spoke of the power of a mayor to ''nominate'' to office whereas section 92-104, as amended by Chapter 161, gives the governor authority to appoint. Under either statute confirmation by authority other than the governor or the mayor is required to complete the nomination or appointment.

In State ex rel. Peterson v. Peck, 91 Mont. 5, 4 Pac. (2d) 1086, the right of a city clerk appointed by the mayor of the town of Sweet Grass to act without confirmation by the city council was drawn in issue. This case is a close parallel to State ex rel. Sandquist v. Rogers, supra. This court said that the power of the mayor ''to nominate to fill a non-elective office also includes like authority when a vacancy arises therein; but in either event the appointment is not effective until concurred in by a majority of the city or town council.'' See 91 Mont. at page 7, 4 Pac. (2d) at page 1087.

These decisions are controlling in the instant cause. We need not look for authority elsewhere. This court said in Holt v. Sather, 81 Mont. 442, 455, 456, 264 Pac. 108, 114, that cases ''from another jurisdiction, in direct conflict with a decision of this court, are not persuasive.''

Counsel for Mr. McChesney have suggested a distinction between the tenure of officers holding over under our Constitution until their successors be elected or appointed and qualified, and those officers who hold under a statute alone. Whatever distinction there may be here in fact we see none in principle. There is no material difference between the facts and the constitutional provision construed and applied by this court in the Acton case, on the one hand, and the facts and the statute now before this court for construction and application, on the other hand, in disposing of Mr. Swanberg's title presently in issue. It was frankly conceded upon the oral argument by counsel for Mr. McChesney that we should overrule State ex rel. Chenoweth v. Acton, supra, as well as State ex rel. Nagle v. Stafford, supra, and must do so, in order to reach the conclusion that on and after May 1, 1955, there was a vacancy on the Industrial

Accident Board which could be filled by the governor in the exercise of his constitutional powers. As we have said before we are not persuaded that these precedents should be so overruled.

The authorities which we find elsewhere carry the conviction that the Stafford and Acton cases were rightly decided, and that the rule there laid down should be adhered to. See McCall v. Cull, 51 Ariz. 237, 75 Pac. (2d) 696; State ex rel. Rogers v. Johnson, 135 Wash. 109, at page 115, 237 Pac. 12; People ex rel. Warren v. Christian, 58 Wyo. 39, at pages 51-60, 123 Pac. (2d) 368; Alcorn ex rel. Hendrick v. Keating, 120 Conn. 427, 432, 181 A. 340; State ex rel. Ryan v. Bailey, 133 Conn. 40, 48 A. (2d) 229; People ex rel. Baird v. Tilton, 37 Cal. 614, 621; State ex rel. Barnes v. Holbrook, 136 Conn. 312, 316, 70 A. (2d) 556; State ex rel. Smith v. Tazwell, 166 Or. 349, 111 Pac. (2d) 1021; State ex rel. Rives v. Herring, 57 N.M. 600, 261 Pac. (2d) 442; State ex rel. Fares v. Karger, 226 Ind. 48, 77 N.E. (2d) 746; State ex rel. Landis v. Bird, 120 Fla. 780, 163 So. 248; State ex rel. McCarthy v. Watson, 132 Conn. 518, 45 A. (2d) 716, 164 A.L.R. 1238, and Annotation commencing at page 1248; 67 C.J.S., Officers, section 51b (2), pages, 213, 214; 42 Am. Jur., Public Officers, section 131, page 976, section 139, pages 980, 981, section 142, page 982; 43 Am. Jur., Public Officers, sections 161, 163, 164, pages 19 to 22.

It follows that Mr. Swanberg holds office as a member and ▮ chairman of the Industrial Accident Board for the specific term of four years and thereafter until his successor has been appointed and qualified. Because his successor, Mr. McChesney, has not yet been confirmed by the Senate, Mr. Swanberg's successor has not yet been appointed as Chapter 161, Laws of 1953, requires. Therefore Mr. Swanberg's term endures, he is *de jure* entitled to his office as against Mr. McChesney's claims and upon this record and as such is entitled to the salary and emoluments of his office as the court below adjudged.

The citations to the contrary pressed upon us by Mr. McChesney's counsel such as State ex rel. Patterson v. Lentz, 50 Mont. 322, 146 Pac. 932; LaBorde v. McGrath, 116 Mont. 283, 149 Pac.

(2d) 913; and State ex rel. Jardine v. Ford, 120 Mont. 507, 188 Pac. (2d) 422, are not in point upon the facts, which are before us here; and the result reached by the court in each of these cases does not conflict with the view, herein announced. In the Lentz case, Chapter 14, Laws of 1913, by express enactment created a third judgeship in the fourth judicial district of this state, a new office which had not existed theretofore. In other words this newly created office upon the effective date of the statute was vacant because there was no incumbent authorized by law to exercise its prerogatives, and for that matter no incumbent at all to discharge its functions and duties. At no point are these the facts present here. Thus the ruling in the Lentz case that upon the effective date of Chapter 14, Laws of 1913, there was a vacancy to be filled by the governor has no bearing at all upon the problem before us now where the office of chairman of the Industrial Accident Board is presently filled by an incumbent expressly authorized by the statute under which he holds to exercise its functions and discharge the duties of chairman. In the McGrath case [116 Mont. 283, 149 Pac. (2d) 914], there was presented for decision no question involving the right of an incumbent to hold over after the expiration of his specified term. The facts presented to this court there raised the question "whether the law requires or permits the political parties, by direct vote, to nominate candidates for the office of county treasurer at the coming regular primary election." Collateral to a solution of that question this court said in the McGrath case that an " 'office is not vacant so long as it is supplied in the manner provided by the Constitution or law with an incumbent who is legally qualified to exercise the powers and perform the duties which pertain to it; and, conversely, it is vacant in the eye of the law whenever it is unoccupied by a legally qualified incumbent who has a lawful right to continue therein until the happening of some future event.' " This language applied to Mr. Swanberg's case is direct authority for the position which we have taken, namely, that the office of chairman of the Industrial Accident Board is not vacant because Mr. Swanberg is legally

entitled, by the statute under which he holds, to exercise its functions and discharge its duties, and is therefore presently an incumbent of that office expressly authorized by law to act as such. Since in the McGrath case upon the facts then before this court there was no incumbent, as the opinion written there plainly states, there was a vacancy. The contrary facts here on the very authority of that decision compel the contrary holding here. In the Ford case there was also an admitted vacancy in the eighth judicial district of the state because one of its judges had retired from the bench there under the provisions of Chapter 212, Laws of 1945. Because there was therefore no incumbent to discharge the duties and exercise the functions of this judgeship it was properly ruled there was a vacancy to be filled by appointment. Again the facts of this case not only distinguish it entirely from those which Mr. Swanberg brings before us now, but also furnish no authority at all for concluding that where there is an incumbent as in Mr. Swanberg's case there is nevertheless a vacancy to be filled by the governor as a recess appointment under Article VII, section 7, of our Constitution.

Nor does the conclusion which we have reached here extend Mr. Swanberg's term of office contrary to the prohibition of Article V, section 31, Constitution of Montana, in substance, that "no law shall extend the term of any public officer * * * after his election or appointment." Chapter 161, Laws of 1953, by its express language has no effect at all upon Mr. Swanberg's tenure or term of office. He holds under section 92-104 of our Codes as that section read before Chapter 161 became law. Consistent with that section Mr. Swanberg's term is for the definite period of four years and for an indefinite period thereafter until his successor in office shall have been appointed and qualified as Chapter 161 requires. Because that chapter attaches the condition now to the governor's appointment that before that appointment becomes effective the consent of the Senate shall be had, Mr. Swanberg's term is neither lengthened nor shortened. He holds after the enactment of Chapter 161 as before until he has a successor legally ap-

pointed and qualified to take over. The circumstance that on April 29, 1955, the Senate was not in session, and therefore a delay has occurred in submitting Mr. McChesney's name for confirmation has nothing whatever to do with Mr. Swanberg's term in point of law. The point made here has already been authoritatively decided in this court adversely to Mr. McChesney's contention in State ex rel. Sandquist v. Rogers, supra, 93 Mont. at page 362, 18 Pac. (2d) at page 618, where the plain and understandable distinction is drawn between the term of a public officer, and the actual tenure under the term as fixed by law of the public officer at the moment holding the office in question. Here Mr. Swanberg's term always has been for four years and until his successor shall have been appointed and qualified. Chapter 161, Laws of 1953, has in no wise touched the duration of this term. Compare Holbrook v. Board of Directors of Imperial Irrigation Dist., 8 Cal. (2d) 158, 161, 64 Pac. (2d) 430. None of the citations to this point submitted by Mr. McChesney's counsel suggests a contrary view. Their argument in their brief seems to be that because now the governor may not have a Senate to whom he may send Mr. McChesney's appointment for confirmation until the regular legislative session convenes in January 1957, and because even then he and the Senate may not be able to agree upon Mr. McChesney as Mr. Swanberg's successor, the "practical effect" of Chapter 161, Laws of 1953, as we have construed and applied that statute here, is to "extend his [Mr. Swanberg's] term from 20 to 22 months beyond where he would have under pre-1953 law." However under section 92-104 as it read before the amendment made in 1953, the governor might have resigned, the lieutenant governor who succeeded him might have refused altogether to make any appointment, and for that or any one of a dozen or more other hypothetical reasons, Mr. Swanberg's tenure might have been extended until a new administration took over at the general election perhaps in 1960. It is apparent that by this process of reasoning the absurdity of the result reached makes the argument of counsel vulnerable. It is significant that so far as we

212

read their citations we find no case called to our attention upon facts at all similar to those now before us which holds that Mr. Swanberg's term of office has been extended by a statute which requires his successor to be confirmed by the Senate. And here it is to be noted that consistent with Article VII, section 11, Constitution of Montana, the governor may convene the state Senate at any time "for the transaction of executive business," which for any practical purpose renders Mr. Swanberg's tenure a matter of choice rather than of law, as in the case put where to serve his pleasure the governor withheld any appointment at all. Nothing in the conclusion which we have reached here or for that matter in Chapter 161, Laws of 1953, either touches or contravenes Article V, section 31, of our Constitution.

Nor did Chapter 161, Laws of 1953, create a new office upon a new industrial accident board, which from and after the effective date of that Act on March 3, 1953, is to be distinguished in its entirety from the old Industrial Accident Board which prior thereto and since 1915 had functioned as such. If the argument for Mr. McChesney to this point were sound, it might then be conceded that the rule of State ex rel. Patterson v. Lentz, supra, would properly be invoked, namely, that the new office created by a statute enacted is vacant for want of an incumbent upon the effective date of the statute, and may therefore be filled as a vacancy in public office. If Chapter 161 did create a new board and a new office for the chairman of that board, it may then be conceded that as soon as Mr. Swanberg's four year term expired on May 1, 1955, there was a vacancy under the new law in the new board which the governor might properly have filled by a recess appointment.

The premise from which counsel draw this conclusion, however, will not stand analysis. It seems entirely clear to us that Chapter 161 neither created a new board nor a new office, viz., that of chairman. Conversely, it seems equally clear to us that this statute preserved intact the old board which had functioned as such since 1915, but provided for a change only in the personnel of the board, and of the conditions laid down under which

the governor might appoint to that board. Here the legislature clearly dealt with details. Moreover, these details suggest that if the legislature could not enact Chapter 161 as it did without impliedly abolishing the old board and in effect creating as Mr. McChesney's counsel argue a new board and a new office, then the legislature could not tamper at any point with any of the functions or any minute detail of the structure of the Industrial Accident Board which it first established by Chapter 96, section 2, Laws of 1915, unless it chose at the same time to create a new board. Such a contention would be an absurdity.

There is nothing in the statute, nothing in our Constitution or Codes, and nothing in this record, other than the argument made by counsel, which intimates that the Industrial Accident Board after March 3, 1953, was other than a lawful and logical continuation of that board as it functioned prior to that date. In the brief of counsel there is no citation of authority either to sustain their point or to point to any conclusion in conflict with that at which we have arrived. And such authority as we have been able to find points conclusively to the contrary of the argument made for Mr. McChesney that under Chapter 161 there was created either a new board or a new office of the chairman of that board, which within the doctrine of the Lentz and other like cases could then be said to be vacant and therefore open for a recess appointment by the governor. See State Board of Education v. Commission of Finance, Utah, 247 Pac. (2d) 435, 442; Wendell v. Lavin, 246 N. Y. 115, 118-123, 158 N.E. 42; In re Household Realty Corp., 158 Misc. 667, 286 N.Y.S. 413. Since Chapter 161, Laws of 1953, did not then create a new industrial accident board nor a new office to be filled by the governor's appointee by and with the consent of the Senate, there was no vacancy on this board or in this office when that chapter became effective on March 3, 1953. There was then no vacancy within the rule of the authorities which we have already noted to which the governor could appoint under his constitutional power to fill vacancies while the state Senate was in recess.

Further in denial of Mr. Swanberg's title it is urged that

Chapter 177, Laws of 1951, which was enacted to implement section 1 of Article XVIII of the State Constitution, approved at the general election held November 7, 1950, is for various reasons unconstitutional and void. From this premise it is reasoned that there was no industrial accident board to which Mr. Swanberg could be appointed when on December 29, 1952, the Governor named him its chairman for the remainder of the term ending May 1, 1955. The argument made to sustain this conclusion is more complicated than convincing.

Of course, if the office of chairman of this board under R.C.M. 1947, section 92-104, before amendment, was not in existence on December 29, 1952, because the effect of amended section 1, Article XVIII, of the Constitution was to abolish that board, and if Chapter 177, Laws of 1951, is, as counsel contend, ineffective, because it fails to square with the Constitution, we may perhaps concede for the purposes of this case that Mr. Swanberg has no title at all, that his appointment is utterly void, his tenure a nullity. We may likewise perhaps concede then also that Chapter 161, Laws of 1953, does not aid his claim, because that statute did not become effective until March 3, 1953, substantially two months after his appointment was made.

Yet the point pressed here by counsel is not open to us for decision upon this appeal. Chapter 177, Laws of 1951, in terms provides for the separate offices of commissioner of agriculture and commissioner of labor and industry, both of which were created by amended section 1 of Article XVIII of the Constitution. Any inquiry then into the constitutionality of Chapter 177 directly involves the rights of these officers to sit as members of the industrial accident board under its provisions and as well under section 92-104 of the 1947 Codes before the enactment of Chapter 161, Laws of 1953. Their titles as such officers and members are directly challenged by any argument that Chapter 177, Laws of 1951, is void upon the assumption that it is constitutionally vulnerable.

Hence to bring any such question here for review both the commissioners of agriculture and of labor and industry must

be before the court as parties to this proceeding. That they are not made parties is not in dispute. Hence even if counsel's argument in the abstract were sound, which we do not concede, we may not hold on this record that the statute, which executes the mandate of amended section 1, Article XVIII, of the State Constitution, vests in them no right to sit as members of the Industrial Accident Board, either because that board was abolished by the effect of the constitutional amendment and because Chapter 177 is invalid, or for any other reason whatsoever. State ex rel. Dunne v. Smith, 53 Mont. 341, 348, 349, 163 Pac. 784, is conclusive that we may not inquire here.

Among the other points made in attack upon Mr. Swanberg's title is the suggestion that inasmuch as after May 1, 1955, Mr. Swanberg did not file a new bond he has forfeited his office; this, because it is said that his original bond specified therein his appointment as chairman for "the term commencing Dec. 29, 1952, and ending May 1, 1955." Here it is argued, our opinions in State ex rel. Nagle v. Stafford, 97 Mont. 275, 290, 34 Pac. (2d) 372, and State ex rel. Nagle v. Stafford, 99 Mont. 88, 43 Pac. (2d) 636, are neither in point nor controlling. We do not agree.

When Mr. Swanberg's bond was executed on December 29, 1952, R.C.M. 1947, section 6-311, was in effect, and became as much an integral part of that bond as any language therein expressly written. City of Philipsburg v. Porter, 121 Mont. 188, 192, 193, 190 Pac. (2d) 676; Valier Co. v. State, 123 Mont. 329, 341, 342, 215 Pac. (2d) 966; State ex rel. Malott v. Board of County Commissioners, 89 Mont. 37, 59, 296 Pac. 1; State ex rel. Judd v. Cooney, 97 Mont. 75, 81, 32 Pac. (2d) 851. In other words, R.C.M. 1947, section 6-311, in force when Mr. Swanberg's bond was given is to be read as a part of that bond precisely like any other of its conditions.

The stipulation of that statute is: "Every official bond executed by any officer pursuant to law is in force and obligatory upon the principal and sureties therein for any and all breaches of the conditions thereof committed during the time

such officer continues to discharge any of the duties of or hold the office * * *."

As applied to the bond which Mr. Swanberg gave on December 29, 1952, this statute means that that bond covered not only the designated term which ran from December 29, 1952, to May 1, 1955, but also any other time beyond that specified during which Mr. Swanberg continued "to discharge any of the duties of or hold the office" in question. It follows that no new bond was required of Mr. Swanberg after May 1, 1955, and that our opinions in the two Stafford Cases directly support the conclusion we reach here.

Other points suggested or argued in the brief of Mr. McChesney's counsel have either been disposed of by what we have already written, or because of the view which we have taken of the whole case are now without substantial bearing upon the merits.

Mr. Swanberg is still entitled to the office of chairman of the Industrial Accident Board and entitled to the compensation therefor.

The judgment of the district court is affirmed.

MR. CHIEF JUSTICE ADAIR, and MR. JUSTICES DAVIS and BOTTOMLY, concur.